ADRIENNE SZYPULA *v.* JOHN W. SZYPULA
(2290)

DANNEHY, C.P.J., DUPONT and BORDEN, Js.

Argued May 10—decision released September 25, 1984

*Michael F. Dowley,* with whom, on the brief, was *Judith Lederer,* for the appellant (defendant).

*Howard A. Baran,* for the appellee (plaintiff).

BORDEN, J. The plaintiff wife filed a complaint and the defendant husband filed a counterclaim, both seeking dissolution of their marriage, custody and support of their three minor children,[1] alimony, and conveyance of the other party's interest in the family home. After a hearing lasting four days, the court, *M. Hennessey, J.,* filed a memorandum of decision and rendered a judgment dissolving the marriage, committing custody of the children to the plaintiff, conveying the defendant's interest in the family home to the plaintiff, and making other financial orders. Subsequently, the defend-

---

[1] A fourth child was over the age of eighteen at the time of the filing of the complaint and counterclaim.

ant moved to modify the support orders, which the court, *Quinn, J.,* granted in part and denied in part. The defendant appealed.[2]

## I

The defendant's principal claim in this appeal is that Judge Hennessey erred in not granting his oral motion for an evidentiary hearing on his postjudgment motion to disqualify her, and in not recusing herself from hearing that motion to disqualify. Analysis of this claim requires us to set forth its procedural setting.

Two days after the filing of the memorandum of decision and the rendering of the judgment, the defendant filed written motions for a new trial, to open the judgment, and to reargue the entire case. The common gist of these three motions, which were substantially identical, was that, in making its custody decisions and its decision as to the family home, the court failed to consider the evidence; that in making its financial orders as to support for the children, the court disregarded the evidence; that the defendant was denied a fair trial because of a bias by the court in favor of the plaintiff; and that certain evidentiary rulings made by the court during the trial were erroneous.

When these written motions came before the court, the defendant's counsel opened by expressing "concern" as to whether Judge Hennessey should be disqualified from hearing the motions, and orally requested an evidentiary hearing on whether Judge Hennessey should be disqualified. This "concern" ripened into an oral motion for Judge Hennessey to disqualify herself from hearing the written motions, and the defendant's counsel then orally moved that the evidentiary hearing be before another judge. These oral motions were denied.

---

[2] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

The record indicates that the defendant was claiming an actual, undisclosed bias in favor of women on the part of Judge Hennessey in deciding this case. The defendant argues in effect that he made a sufficient offer of proof of bias by Judge Hennessey to require an evidentiary hearing on his claim; and that, having done so, Canon 3 C (1) (d) (iv) of the Code of Judicial Conduct[3] required that Judge Hennessey disqualify herself because she might be a witness in that evidentiary hearing. We disagree.

An accusation of bias or prejudice "against a judge . . . 'strikes at the very core of judicial integrity and tends to undermine public confidence in the established judiciary.' " *Cameron* v. *Cameron,* 187 Conn. 163, 168, 444 A.2d 915 (1982). Because such a charge "implicates basic concepts of fair trial"; id.; and because "[n]o more elementary statement concerning the judiciary can be made than that the conduct of the trial judge must be characterized by the highest degree of impartiality"; *Felix* v. *Hall-Brooke Sanitarium,* 140 Conn. 496, 501, 101 A.2d 500 (1953); it requires that we "[examine] the record with infinite care . . . ." Id.

Our Supreme Court has indicated that, where there is a factual dispute involved in a claim of judicial bias, an evidentiary hearing may be in order, and it has implied that such a hearing be before another judge. See *Papa* v. *New Haven Federation of Teachers,* 186 Conn. 725, 750–53, 444 A.2d 196 (1982). The issue posed by the defendant's claim here, then, is whether he was entitled to such a hearing.

---

[3] Canon 3 C (1) (d) (iv) provides in pertinent part: "A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where . . . he . . . is . . . likely to be a material witness in the proceeding . . . ." See *Papa* v. *New Haven Federation of Teachers,* 186 Conn. 725, 444 A.2d 196 (1982) (standard is the objective one of whether the judge's impartiality might reasonably be questioned.)

"In Connecticut, the disqualification of judges is governed by General Statutes § 51-39 and Canon 3 C of the Code of Judicial Conduct." (Footnotes omitted.) Id., 744. General Statutes § 51-39, which deals with disqualification by reason of the judge's relationship with a specific party or potential interest in the outcome of the proceedings; *Dacey* v. *Connecticut Bar Assn.,* 184 Conn. 21, 26, 441 A.2d 49 (1981); is not involved in this appeal.

Although Canon 3 C states the substantive norm for disqualification; see footnote 3, supra; it does not articulate the procedural standards which a litigant must meet in order to set in motion such a momentous mechanism as an evidentiary hearing on such a serious claim as actual bias on the part of the trial judge. Nor does our prior case law shed much light. All that is clear is that the litigant must "[raise] the question of disqualification in a timely and appropriate manner." *Dacey* v. *Connecticut Bar Assn.,* supra, 28.

It may be that, by waiting until the outcome of the trial, the defendant did not timely assert his claim and that he thus waived it. See *Krattenstein* v. *G. Fox & Co.,* 155 Conn. 609, 236 A.2d 466 (1967). The defendant claims, however, that he was not alerted to the bases of his claim until after the trial. For purposes of this decision we assume, therefore, that the defendant's motions for recusal and for an evidentiary hearing were timely.

Other jurisdictions have statutes or rules of court which prescribe the procedural requirements for raising a claim of judicial disqualification. See, e.g., 46 Am. Jur. 2d, Judges §§ 209–15. In the absence of such prescriptions, the procedure to be employed must take into account various principles which may, at times, compete with each other. Among these principles are: (1) that the integrity of the judicial system requires both

the fact and the appearance of impartiality; see *Papa* v. *New Haven Federation of Teachers,* supra, 744–46; (2) that a party who has a good faith belief, grounded on facts, that a judge is biased is entitled to demonstrate that bias; and (3) that the due administration of justice requires that such a demonstration be based on more than opinion or conclusion.

The federal procedure requires, inter alia, that a statement of the facts and reasons upon which the claim for disqualification is based, be presented initially to the judge whose disqualification is sought. That judge must then, taking the facts stated as true, pass on their legal sufficiency for disqualification; and, if those allegations "give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment," the judge is disqualified without further inquiry into the truth of the facts alleged. *Berger* v. *United States,* 255 U.S. 22, 33–34, 41 S. Ct. 230, 65 L. Ed. 481 (1921); *United States* v. *Tropiano,* 418 F.2d 1069, 1077 (2d Cir. 1969); *Hayes* v. *National Football League,* 463 F. Sup. 1174, 1178–79 (C.D. Cal. 1979); note, "Disqualification of Judges for Bias in the Federal Courts," 79 Harv. L. R. 1435 (1966). Moreover, "the alleged bias and prejudice, to be disqualifying, must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his [or her] participation in the case. *United States* v. *Grinnell Corp.,* 384 U.S. 563, 583, 86 S. Ct. 1698, 16 L. Ed. 2d 778 (1966) . . . ." *Hayes* v. *National Football League,* supra, 1179.

We believe that this procedure provides a useful starting point for articulating the procedural requirements which a litigant in this state must meet in order to obtain an evidentiary hearing on a claim of actual bias. In view of our Supreme Court's indication, however, that, when facts are controverted, an evidentiary hearing into the claim of bias is appropriate; *Papa* v. *New*

*Haven Federation of Teachers,* supra, 750–54; we also believe that the proper balance among the various competing principles is struck by requiring the party asserting the bias of the judge to state facts on the record which, if true, give fair support to his claim. If those facts, taken as true, give that fair support, the party is entitled to an evidentiary hearing on those facts before another judge.

Applying this standard to the defendant's offer of proof here, we find that it falls far short of indicating fair support for the defendant's claim that Judge Hennessey was biased. It was no more than a compendium of vague and unverified assertions relating to a remark which Judge Hennessey had allegedly made, before the trial in chambers, concerning her background, to some opinions of her held by six or seven unnamed attorneys, and to an unspecified reason for some unspecified judicial assignment. This offer of proof was grossly deficient. Such vague and unverified assertions of opinion and speculation are nowhere near factually sufficient to trigger an evidentiary hearing into a judge's impartiality. Taken as true, whether singly or together, these assertions do not give fair support to a claim of either actual or apparent bias in favor of women on the part of Judge Hennessey. Moreover, we have carefully reviewed the transcript of those portions of the trial supplied to us in connection with this appeal, and we see no evidence whatsoever that Judge Hennessey conducted the trial in anything but a completely fair and impartial manner.

## II

The defendant's other claims concern various financial orders, and the order of custody.

## A

The defendant first argues that the court erred in requiring him to provide medical coverage for the minor

children because such coverage was available to the plaintiff without cost. This argument is without merit. Had it been established at the trial that such coverage for the children was available to the plaintiff without cost to her, and that the defendant would have to pay for such coverage, it would have been an abuse of discretion to order the defendant to bear this burden. It is clear, however, that the defendant did not make this factual claim until he filed his postjudgment motions. Thus, there was no evidence of such a discrepancy presented at the trial. Moreover, the court, in ruling on the defendant's postjudgment motions, pointed out that the defendant, who had previously been covered by the plaintiff's medical coverage, would in all likelihood be availing himself of the equivalent coverage through his employer, and that, if coverage for the children resulted in an additional expense, he could move for modification of the judgment on that basis.

## B

The defendant next claims error in the court's support orders. This claim is based on what the defendant urges is a misreading of his financial affidavit. Like the argument regarding the medical coverage, this claim was first raised in the defendant's postjudgment motions. In his brief, however, the defendant notes that it was his financial affidavit which the court used to make the support orders, and that the affidavit was misleading. We will not find error on appeal in an order which the party seeking review induced by his own misleading conduct in the trial court. See *Leveston* v. *Leveston,* 182 Conn. 19, 24, 437 A.2d 819 (1980). Furthermore, the only reference in the defendant's brief to the manner in which his misleading affidavit should have been read, is to the hearing on his postjudgment motions, after the trial court had already issued its

memorandum of decision in reliance on that affidavit. Thus, we cannot find an abuse of discretion in these orders.

## C

The defendant also argues that the court erred in awarding the defendant's entire interest in the family home to the plaintiff, because the defendant was the sole contributor to the mortgage payments and because the award left him without any assets. Both the plaintiff and the defendant are teachers. The court found, however, that for several years the plaintiff remained at home caring for the children in their early years, and returned to work in 1971. After that time the parties established a division of labor and financial responsibilities, under which the plaintiff paid out of her earnings for food, clothing, gifts and part of a business loan which they had incurred. Furthermore, the court found that after this action was instituted the defendant relinquished his control over an $18,000 joint bank account which he had with his seventy-seven year old mother, and that, one month before the trial of the case, he had made a fraudulent conveyance of a luxury house trailer to the parties' oldest child. These findings are not challenged on this appeal. Under these circumstances, we cannot find that this is the "rare case in which a disappointed litigant will be able to demonstrate abuse of a trial court's broad discretion in family matters." *Yontef* v. *Yontef,* 185 Conn. 275, 279, 440 A.2d 899 (1981); see also *Lane* v. *Lane,* 187 Conn. 144, 444 A.2d 1377 (1982) (no abuse of discretion in award of defendant's entire interest in family home to the plaintiff).

## D

The defendant argues that the court erred in awarding custody of the youngest minor child to the plaintiff. We were informed at oral argument, however, that the child, who is now age sixteen, is currently living

with the defendant, and that, although no formal motion had yet been filed to reflect this change of circumstances, the plaintiff acquiesces to the child's desires and does not plan to challenge this change. Thus, since the parties have in effect settled this issue between themselves and our decision would not result in practical relief to either party, this issue is moot and we do not consider it. See *Waterbury Hospital* v. *Connecticut Health Care Associates,* 186 Conn. 247, 250–51, 440 A.2d 310 (1982); *Groesbeck* v. *Sotire,* 1 Conn. App. 66, 68–69, 467 A.2d 1245 (1983).

### III

The defendant's final claim concerns the order of the court that, in addition to the order of $150 weekly support for the three minor children, he contribute $150 per month toward the mortgage on the family home. One of the three children reached the age of eighteen on November 13, 1981, approximately six months after the judgment. The court, *Quinn, J.,* reduced the $150 weekly order by one third to $100, but left in effect the $150 monthly mortgage contribution. The defendant claims that the monthly mortgage contribution must also be reduced proportionately, because it constituted a support order which terminated as a matter of law when the minor child whom it benefited reached the age of eighteen. We agree.

The judgment ordered the defendant "to contribute $150 per week and $150 on the first day of each month towards the mortgage, as support for the three children . . . ." While it is true that the plaintiff's expenses on the mortgage may have remained the same regardless of whether there were two or three minor children in her custody, it is clear that the monthly mortgage contribution order was aimed at the defendant's legal obligation to bear a proportional part of the burden of shelter expense being borne by the plaintiff as custo-

dian of the oldest minor child. When that child reached the age of eighteen, the defendant no longer could be charged with that expense. See *Cariseo* v. *Cariseo,* 190 Conn. 141, 459 A.2d 523 (1983); *Gould* v. *Gould,* 1 Conn. App. 224, 470 A.2d 713 (1984). Thus, the monthly mortgage contribution should also have been reduced proportionately.

There is error only with respect to the order of the court dated December 4, 1981, that the mortgage contribution payments are to remain in effect, the judgment is set aside as to that order and the case is remanded with direction to modify the judgment by reducing the mortgage contribution payments to $100 per month effective the week of December 16, 1981.

In this opinion the other judges concurred.