[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM CONCERNING RECUSAL
INTRODUCTION
In a motion dated August 3, 1990, the plaintiff, C.F.M. of Connecticut (CFM) moved the trial court (J. Susco) for: 1) recusal; CT Page 2199 or 2) disqualification; or 3) a mistrial.
This court will consider the motion as one of recusal of the trial court.
The trial court removed herself from participation, ab initio, in any hearing of the instant motion.
A hearing was held on August 10, 1990, before this court, wherein the plaintiff CFM made the following factual offers of proof in support of its motion.*
FACTS
THE PLAINTIFF DOES OFFER THE FOLLOWING FACTS IN SUPPORT OF ITS CLAIMS OF PARTIALITY OF THE TRIAL COURT:
I. COMMENTS OF THE TRIAL COURT.
A. Comments of the trial court relevant to the instant case.
 1. On or about October 30, 1989, the trial court said that it "was looking forward to the cross-examination of Jim Schmidt."
a. Jim Schmidt was the founder of CFM.
 b. The comment of the court took place prior to the taking of any testimony.
B. Comments of the trial court in an other related case.
 1. That in a related case, not the one presently before the trial court or this court, but on appeal, 294 Farmington Realty Co. v. CFM of Connecticut (hereinafter 294 Farmington), the trial court on January 2, 1990, in the course of the argument on the plaintiff's motion to vacate the judgment rendered in 294 Farmington said:
 "Mr. Timbers, the court was present in the clerk's office and there was nothing said about the summary process action."
 2. That the plaintiff's counsel was present in the clerk's office when the subject topic was discussed;
 3. That the plaintiff's counsel did not see the trial court present in the clerk's office during subject conference; CT Page 2200
 4. That the summary process action was discussed at that conference in the clerk's office.
II. THE SCHEDULING OF THREE RELATED CASES WAS MANIPULATED TO PLAINTIFF'S DETRIMENT:
 A. On August 1, 1989, plaintiff filed a motion for a preliminary injunction (the instant cases) that would restrain a defendant from committing alleged violations of the franchise agreement. CFM OF Connecticut v. Chowdhury, et al, #8910-3368. Seven and one-half months elapsed before a hearing.
 B. On or about December, 1989, plaintiff commenced a summary process action to evict defendant Chowdhury, CFM of Connecticut v. Chowdhury, et al, #8910-851658.
 C. Earlier (than December, 1989) the landlord, 294 Farmington Realty Co., filed a summary process action against Chowdhury and CFM in order to evict Chowdhury and CFM, 294 Farmington Realty Co. v. CFM of Connecticut, et al, #8905-49982.
 1. That the hearing in the 294 Farmington case was originally scheduled for December 21, 1989;
 2. On December 19th, the parties appeared for a hearing on the instant case. At this time the clerk said the hearing on the preliminary injunction of this day is off as is the hearing on the summary process (294 Farmington) scheduled for December 21, 1989.
 3. On December 20, 1989, at 5 PM plaintiff's counsel received a phone call from attorney Lowry indicating that the summary process (294 Farmington) case was scheduled for December 21, 1989 at 10 A.M.
 4. The basis for plaintiff's motion to vacate the judgment in 294 Farmington is that plaintiff did not have enough notice to subpoena witnesses and to properly prepare for trial in the 294 Farmington summary process matter.
III. THE LETTER OF JANUARY 2, 1990, FORWARDED BY PLAINTIFF'S COUNSEL TO THE TRIAL COURT.
 A. That plaintiff's counsel sent a letter to the trial court on January 2, 1990, relevant to scheduling concerns CT Page 2201 in the 294 Farmington case;
 B. That, inadvertently, copies of the letter addressed to the trial court were not forwarded to attorneys of record;
 C. That the court forwarded plaintiff's counsel's letter of January 2, 1990, an ex parte communication, to the grievance committee;
 D. That the chairman of the Statewide Grievance Committee will testify that he keeps no records of same. However, in his memory this referral was the only instance in which he received a communication from a court alleging that the letter was not copied to opposing counsel as a basis for the referral.
 E. That a representative of the Appellate Clerk's Office will testify that the plaintiff's counsel's January 2, 1990 letter to the trial court is not part of the Appellate Court record in the 294 Farmington case.
IV. THE RULINGS OF THE TRIAL COURT.
 A. RULINGS OF THE TRIAL COURT RELEVANT TO THE INSTANT CASE WHICH TOOK PLACE IN OCTOBER, 1989.
 1. The plaintiff's attorney moved for an ex parte prejudgment remedy in October of 1989.
 a. The trial judge told the plaintiff's counsel that the trial court did not grant ex parte prejudgment remedies.
 b. The plaintiff was not granted an ex parte prejudgment remedy.
 c. The plaintiff's counsel has seen other parties receive ex parte prejudgment remedies. An attorney told plaintiff's counsel that he, the attorney, was before the same trial court on an ex parte application for a prejudgment remedy.
 d. The plaintiff's counsel did not inquire of the attorney referred to in paragraph c whether or not opposing counsel had filed an appearance in the matter in which the attorney applied for a prejudgment remedy. CT Page 2202
 B. RULINGS OF THE TRIAL COURT IN THE INSTANT CASE WHICH TOOK PLACE BETWEEN FEBRUARY AND MAY, 1990.
 1. The plaintiff subpoenaed the business records of the defendant Chowdhury in order to demonstrate irreparable injury.
a. The subpoena was quashed by the trial court.
 b. The plaintiff's counsel does not know why the judge quashed the subpoena.
 2. The witnesses of the plaintiff were not permitted to testify by the trial court concerning those matters with which they were familiar.
 a. The testimony of Roger Cote who attended some of the hearings on CFM's motion for a preliminary injunction was unduly limited.
 (1) Cote did testify that: plaintiff's counsel was unable to get his points across with the trial court; that the trial court did not allow the witnesses to answer questions posed by the plaintiff's counsel that Cote felt were relevant; that virtually every question asked of Cote by plaintiff's counsel, Cote was not allowed to answer; the same limitation of testimony occurred with witness Jim Schmidt; that there was always some reason why plaintiff's witnesses were not allowed to tell their side of the story.
(2) Cote is not an attorney.
 (3) Cote is a principal in a company that purchased CFM from Schmidt.
 b. The rulings by the trial court in unduly limiting Cote's testimony forced plaintiff's counsel to call Schmidt as a witness.
 (1) The trial court would not allow Schmidt to testify about anything prior to the alleged actual breeches (of the franchise agreement) of 1989.
 (2) The trial court said to plaintiff's counsel: "Mr. Timbers, it is not my practice to tell attorneys how to try cases, but I think your case would go a lot quicker and easier if CT Page 2203 you just put in, at this time, the breaches (of) Mr. Chowdhury that Mr. Schmidt can testify about . . . . (I)f Mr. Chowdhury raises those issues you can call back Mr. Schmidt."
 (3) Plaintiff's counsel did what trial court suggested and called Schmidt as a witness and limited Schmidt's testimony to the fact of the breaches (of the franchise agreement) by Chowdhury. Chowdhury testified as plaintiff's counsel expected. After Chowdhury testified, plaintiff's counsel re-called Schmidt as a witness.
 (a) The defendants objected to the recalling by plaintiff of Schmidt.
 (b) The plaintiff's motion to recall Schmidt is pending before the trial court.
 (c) Mary Rousell, who attended some of the hearings on CFM's motion for a preliminary injunction, did testify that:
 (1) Observed that when plaintiff's counsel asked the plaintiff's witness questions, that he was constantly put off (and the witness was) not allowed to answer; that occurred with (plaintiff's witnesses) Cote and Schmidt.
 (d) Ms. Rousell is the secretary of the plaintiff's counsel.
 3. Whatever position the plaintiff's counsel assumed, the court ruled adversely.
 4. The trial court refused to permit the plaintiffs to introduce evidence concerning the other stores Chowdhury opened using the CFM name in order to show irreparable injury.
 5. The plaintiff sought to amend the complaint in May, 1990. The motion has not yet been ruled upon.
C. RULINGS OF THE TRIAL COURT CONCERNING OTHER RELATED CASES.
 1. In 294 Farmington Realty Company v. CFM of Connecticut the landlord's case for summary process, the trial court imposed a surety appeal bond in the amount of $65,000. CT Page 2204
 (a) The rent payments of the plaintiff are approximately $7,200 (per month). Chowdhury pays the landlord directly $5,600 (per month). The most the landlord would be out per month would be $1,500.
 (b) The appeal would have to last three and one-third years for the $1,500 per month to add up to $65,000.
 2. In cfm of Connecticut v. Chowdhury, et al (#8910-851658), the plaintiff's case for summary process, the trial court stayed the case until the appeal in 294 Farmington Realty Company v. CFM of Connecticut, et al is decided.
 (a) The trial court refused to allow the plaintiff to have use and occupancy payments while case is stayed.
 (b) In no other reported case under similar circumstances were use and occupancy payments denied.
DISCUSSION
The plaintiff does not, seek a reversal of any of the trial court's rulings but claims that all of the facts offered demonstrate a pattern or course of conduct which evidences a partiality by the trial court against the plaintiff and/or his cause.
These charges by the plaintiff accuse the trial judge of bias or prejudice and, as such, are accusations which "[strike] at the very core of judicial integrity and [tend] to undermine public confidence in the established judiciary. . . ." LaBow v. LaBow,13 Conn. App. 330, 333 (1988), Felix v. Hall-Brook Sanitarium,140 Conn. 496, 501, 101 A.2d 500 (1953).
Such accusations "[implicate our] basic concepts of [a] fair trial." LaBow, id, Cameron v. Cameron, 187 Conn. 163, 168,444 A.2d 915 (1982).
Such allegations of partiality against a judge demand immediate attention and a thorough review of all proffered facts which the defendant believes supports his claim that he was denied the right to a fair trial by an impartial judge. Szypula v. Szypula, 2 Conn. App. 650, 653, 482 A.2d 85 (1984).
Canon 3(C)(1) of the Code of Judicial Conduct requires a judge to disqualify himself or herself in any judicial proceeding in which his or her impartiality might reasonably be questioned. CT Page 2205
"It is axiomatic that a trial judge must conduct all trial proceedings with the highest degree of impartiality"; LaBow, supra Felix, supra, Postemski v. Landon, 9 Conn. App. 320, 322,518 A.2d 674 (1986); and that as a minister of justice, a trial judge ought to be "cautious" and circumspect in his language and conduct. LaBow, supra, 333-334, Felix, supra, 502. "The trial judge should be careful to refrain from any statement or attitude which would tend to deny the defendant of a fair trial. LaBow, supra, State v. Gionfriddo, 154 Conn. 90, 97, 221 A.2d 851 (1966), LaBow, supra, 330.
Disqualification of a trial judge is not dependent upon proof of actual bias. LaBow, id. The controlling standard is whether a reasonable person who is aware of all the circumstances surrounding the judicial proceeding would question the judge's impartiality. Papa v. New Haven Federation of Teachers, 186 Conn. 725,745-46, LaBow, supra.
Canon 3C reflects the purpose of avoiding even the appearance of impropriety in the realm of judicial conduct. We do not question that the prevention of the appearance of impropriety is of vital importance in preserving confidence in the judiciary and the judicial process. Bonelli v. Bonelli, 213 Conn. 14, 19.
The standard to be utilized in assessing a challenge to the impartiality of the trial judge has recently been reviewed by our appellate court in Szypula v. Szypula, 2 Conn. App. 650 (1984).
Our Supreme Court has indicated that, where there is a factual dispute involved in a claim of judicial bias, an evidentiary hearing may be in order, and it has implied that such a hearing be before another judge. Szypula, 653.
The issue here is whether the plaintiff, who claims partiality of the trial judge, is entitled to an evidentiary hearing.
Although Canon 3C states the substantive norm for disqualification, it does not articulate the procedural standards which a litigant must meet in order to set in motion such a momentous mechanism as an evidentiary hearing on such a serious claim as actual bias on the part of the trial judge. Nor does our prior case law shed much light. All that is clear is that the litigant must "[raise] the question of disqualification in a timely and appropriate manner. Szypula, supra, 654.
In the absence of procedural requirements for raising a claim of judicial disqualification, the procedure to be employed must take into account various principles which may, at times, compete with each other. Among these principles are: 1) that the integrity CT Page 2206 of the judicial system requires both the fact and the appearance of impartiality (citation omitted); 2) that a party who has a good faith belief, grounded on facts, that a judge is biased is entitled to demonstrate that bias; and 3) that the due administration of justice requires that such a demonstration be based on more than opinion or conclusion.
Our appellate court, in the absence of state guidelines in this area, has looked to the federal courts for guidance.
The federal procedure requires, inter alia, that a statement of the facts and reasons upon which the claim for disqualification is based, be presented initially to the judge whose disqualification is sought. That judge must then, taking the facts stated as true, pass on their legal sufficiency for disqualification; and, if those allegations "give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment," the judge is disqualified without further inquiry into the truth of the facts alleged. (citations omitted). Szypula, supra, 655.
Moreover, "the alleged bias, and prejudice, to be disqualifying, must stem from an extra judicial source and result in an opinion on the merits on some basis other than what the judge learned from his [or her] participation in the case." (citations omitted). Id.
Accordingly, this court allowed the movant to state facts upon the record which, if true, give fair support to his claim. If those facts, taken as true, give that fair support, the party is entitled to an evidentiary hearing on those facts before this court or a judge other than the one whose partiality is challenged.
For the purposes of this preliminary hearing, this court has accepted all facts proffered by plaintiff as true.
The motion of the plaintiff must fail for the following reasons:
NOT TIMELY.
The claim of partiality of the trial court is not timely. The claim of partiality or bais of the trial court was made in a motion dated August 3, 1990. For claims I, II, III, IVA and IVC, the most recent act attributed to the trial court was January 2, 1990; for claims IVB, the most recent acts attributed to the trial court occurred between February and May, 1990.
It is axiomatic that a claim of partiality by the trial court must be raised at the earliest possible time. Such a timely claim, in the event it has merit, will allow an errant court to CT Page 2207 either correct itself, disqualify itself, or at the very least the record will be preserved for the petitioner.
Many of the claims of the plaintiff took place in 1989. The petitioner seeks to make less stale his 1989 claims of partiality by adding to said claims the rulings on evidence of the trial court during the hearings on the preliminary injunction (the instant case). This effort by petitioner cannot succeed to make more timely the plaintiff's 1989 claims because even the more recent challenge to the court's rulings are no more recent than May of 1990.
In addressing any other motion, this court would end its inquiry at this juncture and dismiss the petitioner's motion because it is not timely made. However, due to the very grave accusations that the petitioner has raised, this court is compelled to inquire further.
CLAIMS CONCERN OTHER CASES NOT BEFORE THIS COURT.
Many of the claims of the petitioner concern cases that were not before the trial court at the time the claims were made nor presently before this court.
The claims of the petitioner in IIB, IIC and III relate to the 294 Farmington case. This case is presently on appeal and was on appeal at the time the motion to recuse was filed. Neither the trial court nor this court has jurisdiction to accede to petitioner's requested remedy of recusal on those cases not before this court. The court is aware, however, that petitioner offers facts concerning other cases in support of his claim of a continued course of conduct by the court alleging bias or partiality.
IV. COMPLETE LACK OF FACTS TO SUBSTANTIATE PLAINTIFF'S CLAIMS.
The facts offered as proof of the trial court's partiality are so woefully deficient that they do not even approach the minimum standard imposed on the petitioner. This court will not address separately each fact proffered by petitioner.
The petitioner asserts conclusions of fact only. The petitioner offers no other facts to substantiate those conclusions (i.e. the court manipulated the scheduling of cases the court quashed the subpoena; et cetera).
The conclusion of facts offered by the petitioner are so devoid of other facts to substantiate the respective claims that the court is unable to draw any inferences. The petitioner, likewise, tenders no facts to demonstrate any extrajudicial CT Page 2208 source as a basis for the trial court's purported bias.
The claim that the handling by the trial court of petitioner' ex parte letter* demonstrates partiality is devoid of any factual basis whatsoever.
Any ex parte communication, inadvertent or otherwise, with a trial court relevant to a pending matter(s) is improper. It is a violation of Rule 3.5 of the Rules of Professional Conduct. The trial court's forwarding the letter to the grievance committee reflects an appropriate response to a serious impropriety. Any impropriety is attributed to the petitioner for the ex parte communication. This court can draw no inference favorable to the petitioner's claim based simply on the facts that 1) the letter was referred to the grievance committee and 2) the letter (a copy) was not included in the clerk's file in the case to which the letter referred.
The claims by the petitioner that the evidentiary rulings of the trial court relevant to the hearing on the preliminary injunction (the instant case) demonstrate bias are baseless. Though it is unusual, if not inappropriate, for a court to consider the evidentiary rulings of another court of equal jurisdiction, this court does accede to the petitioner's request for review because of the serious claims of partiality on the part of the trial court.
Again, petitioner offers only his conclusions as the only basis of the claims. There is no factual basis offered for the conclusion proffered. The fact that there is no transcript offered showing the challenged ruling in context (or any basis offered orally) is grossly insufficient. The offer is devoid of any reference to the rules of evidence, the facts comprising the offer of proof, and any other facts from which this court could reasonably ascertain whether there was any abuse of discretion involved in the particular ruling. Petitioner simply asserts, for example, that the "subpoena for business records was quashed" and petitioner knew not why nor offers any other factual basis. This offer is insufficient for he court to draw any reasonable inference. There exists the same deficiency as to all other challenged rulings.
The offer of the testimony of two witnesses as to their respective courtroom observations requires little comment by this court. The testimony of those not legally trained who observe only a portion of the courtroom proceedings, however, well intentioned, falls far short of approaching the objective standard imposed on these proceedings.
The offer of proof made by plaintiff's counsel is grossly CT Page 2209 deficient. Such vague and unverified assertions of opinion and speculation are no where near factually sufficient to trigger an evidentiary hearing into a judge's impartiality. Taken as true, whether singularly or together, these assertions do not give fair support to a claim of either actual or apparent bias against the plaintiff, his counsel, or plaintiff's cause on the part of the trial court. See Szypula, supra, 650.
The motion for an evidentiary hearing on the motion to recuse is denied.
Reasonable attorney's fees and court costs are imposed on petitioner.
MIANO, J.