## STATE OF CONNECTICUT *v.* ROBERT MONTINI
### (AC 16883)

Spear, Hennessy and Sullivan, Js.

---

[11] See footnote 10.

Argued November 12, 1998—officially released April 13, 1999

*Louis S. Avitabile*, for the appellant (defendant).

*Michael E. O'Hare*, assistant state's attorney, with whom were *Cara Eschuk*, assistant state's attorney, and, on the brief, *John A. Connelly*, state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Robert Montini, appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), attempted sexual assault in the first degree in violation of General

Statutes §§ 53a-70 (a) (2) and 53a-49 and four counts of risk of injury to a child in violation of General Statutes § 53-21. The defendant claims that (1) the trial court abused its discretion by allowing the state to reopen its case to present additional testimony from the victim after the defense had rested, thus depriving the defendant of a fair trial, (2) the trial court abused its discretion in admitting into evidence a videotape of the victim's testimony, in which the camera panned the courtroom and showed that the defendant was not present during the videotaping of that testimony, (3) the trial judge failed to recuse himself despite the appearance of partiality and (4) the trial court improperly granted the state's motion to quash the defendant's subpoena to have the victim testify at the *Jarzbek*[1] hearing. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. The victim was born on May 28, 1987, in Jamaica. On January 17, 1990, the victim's mother married the defendant and in January, 1993, the victim, who had been living with relatives in Jamaica, moved in with her mother and the defendant.

On the evening of March 10, 1995, the mother saw the defendant stick his tongue into the victim's mouth while kissing her. The mother called the police and the victim told the police about the incident. The police investigated the incident and reported it to the department of children and families (department). Subsequent interviews by the police and the department revealed the defendant's prior conduct with the victim.

[1] In *State* v. *Jarzbek*, 204 Conn. 683, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988), our Supreme Court held that, in a criminal prosecution involving sexual abuse of a minor child, a court may allow the videotaping of testimony of the minor victim outside the physical presence of the defendant, when the state proves by clear and convincing evidence a compelling need to exclude the defendant, without violating the defendant's constitutional rights.

From about January, 1993, to March, 1995, the defendant subjected the victim to various sexual acts. The defendant said he would blame her for his behavior if she told anyone about what he did to her. Additional facts and procedural history will be discussed where relevant to the issues on appeal.

I

The defendant claims that the trial court deprived him of a fair trial when it improperly allowed the state to reopen its case to present additional testimony after the state and the defendant had rested. We disagree.

The following facts and procedural history are necessary to the resolution of this issue. The victim testified by videotape that, on the evening of March 10, 1995, while playing hide-and-seek with her sister, she was invited by the defendant to hide under the sheets of the bed in which he was resting. Upon doing so, the defendant stuck his tongue into her mouth while kissing her. Her mother came into the bedroom, saw what was taking place and asked her what happened.[2] The victim told her, and her mother called the police.

On October 22, 1996, the state called the victim's mother as a witness. The mother's testimony contradicted the testimony of the victim and also differed from her prior descriptions of the incident. The mother testified that she and the defendant had an argument and, later in the evening, the defendant pushed her toward the wall and punched her when she said she was going to divorce him and take the children away.

---

[2] At some time during the evening, the victim's mother took the victim down to the laundry room in the basement. On the basis of the child's videotaped testimony, it was not clear when the victim's mother took the victim down to the laundry room. The state claims that it occurred after the police left and the purpose was to chastise the child. The defendant claims that the visit to the laundry room occurred before the police came, and its purpose was to tell the child to lie to the police.

She then told the victim to tell the police that the defendant had put his tongue into her mouth and had been touching her. She claims that she told the victim to lie to the police because, on a previous occasion, when the defendant and she had had a physical confrontation, the police did nothing about it. The mother stated that she then called the police and falsely accused the defendant of molesting her daughter. She further testified that she later told her daughter to withdraw her statement against the defendant but did not tell the police that she made up the allegations against the defendant because she was afraid of being punished for falsely reporting a crime.

On October 29, 1996, the state rested its case without presenting additional testimony from the victim to rebut her mother's testimony. The next day, when the defendant still had two witnesses to call, the state indicated to the court that it planned to call the victim as a rebuttal witness. On October 31, 1996, the state filed a motion seeking the court's permission to allow the victim to testify in rebuttal of her mother's testimony, or, in the alternative, to reopen its case. The trial court declined to consider further testimony from the victim as rebuttal evidence, but granted the state's motion to reopen its case.

The defendant argues that the rule of law is that a trial court may reopen a case only if it believes that evidence on a material issue was not introduced due to inadvertence or mistake, and that, in the absence of the evidence, there is a serious danger of a miscarriage of justice. The defendant further argues that there was no inadvertence or mistake because the state purposely delayed its request to reopen only to obtain a strategic advantage by having the victim testify last.

"[I]f a trial court feels that, by inadvertence or mistake, there has been a failure to introduce available

evidence upon a material issue in the case of such a nature that in its absence there is a serious danger of a miscarriage of justice, it may properly permit that evidence to be introduced at any time before the case has been decided. . . . Thus, witnesses can be permitted to elaborate or to explain testimony already given. . . . The decision to reopen a criminal case to add further testimony lies within the sound discretion of the trial court. . . . The trial judge's discretion, which is a legal discretion, should be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . The purpose of this discretion is to preserve the fundamental integrity of the trial's truth-finding function. . . . The trial court's discretion will be reversed only upon manifest abuse of discretion or injustice." (Citations omitted; internal quotation marks omitted.) *State* v. *Zoravali*, 34 Conn. App. 428, 441–42, 641 A.2d 796, cert. denied, 230 Conn. 906, 644 A.2d 921 (1994).

In granting the state's motion to reopen its case, the trial court indicated that the victim's videotaped testimony was taken before anyone knew what testimony her mother would give, so the state was precluded from asking the child questions about her mother's testimony. The defendant argued that, if the state had prepared its case properly, it would not have been surprised by the mother's testimony. The state indicated, however, that prior to the trial, the mother was charged with a criminal offense as a result of her attempt to induce her daughter to conceal the defendant's sexually abusive conduct from the police and, therefore, the attorney representing the mother in the criminal matter would not permit the prosecutor to interview her.

The trial court concluded that there was "a compelling circumstance here and that no substantial prejudice

will occur . . . and [to] allow the state to reopen for that limited purpose is in accord with fundamental integrity of a trial's truth finding function." We note that "[i]n determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling." (Internal quotation marks omitted.) *Suffield Bank* v. *Berman*, 228 Conn. 766, 783, 639 A.2d 1033 (1994). "[E]xcept in special circumstances, appellate courts should generally defer to the trial court's judgment in resolving the admissibility of evidence offered after the parties have rested. . . . Unless the state's offer seeks to fill an evidentiary gap in its prima facie case that was specifically called to the state's attention by the defendant's motion for acquittal . . . the trial court may permit additional evidence to be presented even though that evidence strengthens the case against the defendant." (Citations omitted.) *State* v. *Roman*, 224 Conn. 63, 71, 616 A.2d 266 (1992), cert. denied, 507 U.S. 1039, 113 S. Ct. 1868, 123 L. Ed. 2d 488 (1993).

In this case, the additional testimony permitted by the trial court did not fill an evidentiary gap in the state's prima facie case but allowed the state to present additional testimony for the limited purpose of clarifying the testimony of the victim in light of her mother's testimony, which the trial court found the state had not anticipated. The trial court limited the state to recall the victim to testify that "her mother did not tell her to lie to the police on March 10, 1995, and that the 'trip' to the laundry room was not taken, as [her mother] testified, *before* the police arrived and for the purpose of [her mother's] instructing her what to say, but *after* the police left, and for the apparent purpose of chastising the child for the additional sexual activity—or for not telling [her mother] about it." (Emphasis in original.) We conclude that, under the circumstances in the present case, the trial court did not abuse its discretion

and there was no injustice to the defendant in allowing further testimony by the victim.

## II

The defendant next claims that he was denied a fair trial because the trial court improperly allowed the jury to view the opening sequence of the victim's videotaped testimony, which showed that the defendant was not in the room during the videotaping. The state responds that this court should not review the defendant's claim because he did not seek "a ruling from the trial court that would have addressed his concerns" with the videotape.

## A

We must first address the state's claim that the defendant failed to preserve this claim. The following procedural history is necessary to the resolution of this issue. There were two separate videotapes shown to the jury, each of which included an opening sequence panning the courtroom. The initial testimony of the victim was taped on July 19 and August 9, 1996. On July 19, 1996, prior to the videotaping, the attorney for the defendant stated to the court: "I understand that we are going to be having the camera pan the room here today to show who the participants are. And I would just like to take this opportunity to place on notice that . . . I am going to be asking the trial judge not to show that particular panning to the jury for reasons that I will make clear at the time of trial." Prior to the victim's testimony, the video camera panned the room so that a viewer could see the courtroom setting.

On October 10, 1996, the state filed a motion in limine requesting that the videotaped testimony of the victim be shown to the jury in its entirety, including the preliminary panning sequence. The defendant filed a memorandum in opposition to the state's motion on October 15,

1996. The court did not formally rule on the motion in limine; the trial court, in effect, ruled on the motion in limine on October 15, 1996, when it addressed the issue of the videotaped testimony and concluded that the full tape including the panning sequence would be shown to the jury. The full videotape of the victim's testimony was admitted in evidence and viewed by the jury on October 17 and 18, 1996. At trial, the defendant did not object to the admission of the videotape in its entirety and did not object to the initial panning sequence.

Practice Book § 60-5 provides in relevant part: "In jury trials, where there is a motion . . . in the absence of the jury, whether during trial or before, pertaining to an issue that later arises in the presence of the jury, and counsel has fully complied with the requirements for preserving any objection or exception to the judge's adverse ruling thereon in the absence of the jury, the matter shall be deemed to be distinctly raised at the trial for purposes of this rule without a further objection or exception provided that the grounds for such objection or exception, and the ruling thereon as previously articulated remain the same. . . ." Here, the defendant filed an objection to the state's motion in limine and, while the trial court did not rule specifically on the motion in limine, the trial court did rule on the issue of the admissibility of the panning sequence on October 15, 1996. We conclude, therefore, that the defendant properly preserved his objection to this issue at trial.

The second videotape of the testimony of the victim, which the state used to rebut the mother's testimony, was made on October 31, 1996. The defendant's attorney objected to the initial panning sequence prior to the videotaping. Therefore, the objections to the introduction of both videotapes were properly preserved at trial.

B

We now address the merits of the defendant's argument. Specifically, the defendant argues that the jurors

"could draw the conclusion, if they knew of the defendant's absence, that somehow the child was frightened of him and, therefore, give credit to the state's criminal charges." The defendant argues that, as a result, the showing of the videotapes denied him a fair and impartial trial.

The state responds that the opening sequence panning the room was necessary to show that a judge was present and to show the comparative size of the child to adults in the courtroom because the jurors evaluate the credibility of witnesses not only by what they say but how they say it and under what circumstances. The state also argues that the defendant failed to show that he was prejudiced because the panning sequence took only a few seconds and the absence of the defendant was hardly noticeable.

The admissibility of the opening panning sequence is an evidentiary question. "Our standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Internal quotation marks omitted.) *State* v. *Hoth*, 50 Conn. App. 77, 87–88, 718 A.2d 28, cert. denied, 247 Conn. 922, 722 A.2d 811 (1998).

The defendant did not provide this court with the factual basis of the trial court's ruling. Normally, during a trial, the jury is able to observe each witness in the courtroom setting. In the present case, the jurors were able to observe the victim testifying only on videotape.

"It is . . . the jury's exclusive province to . . . determine the credibility of the witnesses." *State* v. *Hooks*, 30 Conn. App. 232, 239, 619 A.2d 1151, cert. denied, 225 Conn. 915, 623 A.2d 1025 (1993). The environment in which the witness testified is an important element for the fact finders to consider when evaluating the credibility of the witness.

In addition, "[t]he function of the court in a criminal trial is to conduct a fair and impartial proceeding. . . . A trial judge in a criminal case may take all steps reasonably necessary for the orderly progress of the trial. . . . Control of the proceedings in the courtroom is necessarily within the trial judge's discretion. . . . When the rights of those other than the parties are implicated, [t]he trial judge has the responsibility for safeguarding both the rights of the accused and the interests of the public in the administration of criminal justice." (Citations omitted; internal quotation marks omitted.) *State* v. *Jupin*, 26 Conn. App. 331, 348–49, 602 A.2d 12, cert. denied, 221 Conn. 914, 603 A.2d 404 (1992).

When the witness is a child victim in a sexual abuse case, General Statutes § 54-86g allows the court to order, under proper circumstances, a videotaping of testimony in a place and in a manner that ensures that the child's testimony will be as reliable as possible and not cause psychological or emotional harm. See *State* v. *Jarzbek*, 204 Conn. 683, 686 n.2, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988). We conclude that the trial court, in its effort to conduct a fair and impartial proceeding protecting the rights of all involved, could reasonably conclude as it did.

In any event, the defendant failed to show substantial prejudice or injustice. Because of the brevity of the entire panning sequence, the defendant's speculation as to what the jurors could have surmised does not

convince this court that he was prejudiced or that injustice occurred. We conclude that the court did not abuse its discretion in admitting into evidence the entire testimony of the victim, including the opening sequence.

## III

The defendant next claims that the trial court improperly denied his motion to recuse the trial judge, *Gill, J.*, from sitting in this matter. Specifically, the defendant argues that the judge "enjoys a national reputation as a child advocate outside of his position as a judicial authority for the state of Connecticut" and that "the prominence attained by the [judge] would conflict with the appearance of neutrality and impartiality of the judicial authority when said judge is called upon to make evidentiary rulings and possibly sentence a defendant in a case where the central focus is the alleged sexual molestation of a child."

The following facts and procedural history are relevant to the resolution of this issue. On October 2, 1996, the defendant moved for the recusal of the trial judge in accordance with Practice Book § 997, now § 1-23. The defendant cites General Statutes § 51-39, Practice Book § 996[3] and canon 3 (c) of the Code of Judicial Conduct[4] to support the requested recusal. The defendant's motion requested relief from the trial court by

---

[3] Practice Book § 1-22, formerly § 996, provides: "A judicial authority shall, upon motion of either party or upon its own motion, be disqualified from acting in a matter if such judicial authority is disqualified from acting therein pursuant to Canon 3 (c) of the Code of Judicial Conduct or because the judicial authority previously tried the same matter and a new trial was granted therein or because the judgment was reversed on appeal. A judicial authority may not preside at the hearing of any motion attacking the validity or sufficiency of any warrant the judicial authority issued nor may the judicial authority sit in appellate review of a judgment or order originally rendered by such authority."

[1] Canon 3 of Code of Judicial Conduct provides in relevant part: "(c) Disqualification.

"(1) A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned . . . ."

asking the trial judge to answer a series of questions concerning his membership in child advocacy organizations and his attendance at conferences and lectures on the topic of children's rights, to provide copies of all his writings on the topic of children's rights dealing with sexual molestation of children and to permit counsel to ask the judge reasonable questions on any information gathered from the judge's answers to the questions posed in the motion. On October 2, 1996, the trial court, after a hearing on the motion, denied the defendant's motion.

"Accusations of judicial bias or misconduct implicate the basic concepts of a fair trial. . . . The appearance as well as the actuality of [partiality] on the part of the trier will suffice to constitute proof of bias sufficient to warrant disqualification." (Citation omitted; internal quotation marks omitted.) *DeMatteo* v. *DeMatteo*, 21 Conn. App. 582, 590, 575 A.2d 243, cert. denied, 216 Conn. 802, 577 A.2d 715 (1990). Canon 3 (c) (1) provides in relevant part: "A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where: (A) the judge has a personal bias or prejudice concerning a party . . . ."

"To prevail on [his] claim of a violation of this canon, the [defendant] need not show actual bias. The [defendant] has met [his] burden if [he] can prove that the conduct in question gave rise to a reasonable appearance of impropriety. We use an objective rather than a subjective standard in deciding whether there has been a violation of canon 3 (c) (1). Any conduct that would lead a reasonable [person] knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned is a basis for the judge's disqualification. Thus, an impropriety or the appearance of impropriety . . . that would reasonably lead one to question the judge's impartiality in a given proceeding

clearly falls within the scope of the general standard
. . . . The question is not whether the judge is impartial
in fact. It is simply whether another, not knowing
whether or not the judge is actually impartial, might
reasonably question his . . . impartiality, on the basis
of all of the circumstances." (Internal quotation marks
omitted.) *Abington Ltd. Partnership* v. *Heublein,* 246
Conn. 815, 819–20, 717 A.2d 1232 (1998).

In this case, the defendant argues that the judge is
a "nationally known advocate for children's rights." He
also states that, during the hearing on the motion for
recusal, he learned that the trial judge was "a co-founder
of the National Task Force for Children's Constitutional
Rights and that he had served on the Connecticut Bar
Association Crime Victims Committee and was chair-
man of the Subcommittee on Child Victims." The defen-
dant claims that, at the hearing, he argued that "the
antithesis of child advocacy is in the form of an alleged
defendant who is alleged to be a child molester or a
child sexual predator, in this case accused of sexual
assault against a child." The defendant failed to present
any evidence in support of his assertions. A factual
basis is necessary to determine whether a reasonable
person, knowing all of the circumstances, might reason-
ably question the trial judge's impartiality. "Vague and
unverified assertions of opinion, speculation and con-
jecture cannot support a motion to recuse . . . .
*LaBow* v. *LaBow,* 13 Conn. App. 330, 340, 537 A.2d
157, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988);
*Szypula* v. *Szypula,* 2 Conn. App. 650, 656, 482 A.2d 85
(1984)." *DeMatteo* v. *DeMatteo,* supra, 21 Conn. App.
591. Even if the defendant had demonstrated that the
trial judge had an interest in victim's rights, he failed
to show how that alone would raise a question of the
trial judge's impartiality in a case against a criminal
defendant accused of sexual assault. "It is a fundamen-
tal principle that to demonstrate bias sufficient to sup-
port a claim of judicial disqualification, the due

administration of justice requires that such a demonstration be based on more than opinion or conclusion." (Internal quotation marks omitted.) *LaBow* v. *LaBow*, supra, 340.

The defendant further argues that the trial court's adverse rulings demonstrate the judge's lack of impartiality. "[T]he alleged bias and prejudice, to be disqualifying, must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." (Internal quotation marks omitted.) Id., 341–42. We conclude that the trial court did not abuse its discretion in denying the defendant's motion for recusal.

## IV

The defendant finally claims that the trial court improperly granted the state's motion to quash the defendant's subpoena to have the child victim testify at the *Jarzbek* hearing. The defendant argues that he must be given every opportunity to present evidence to convince the hearing court that it should not find the necessity to exclude him. The state responds that requiring a victim to testify at a *Jarzbek* hearing, the purpose of which is to determine whether it is necessary to exclude the defendant in order to preserve the accuracy and reliability of the child victim's testimony, would undermine the purpose of § 54-86g. We agree with the state.

The following facts are necessary to the resolution of this issue. On December 29, 1995, the state filed a motion, pursuant to § 54-86g,[5] requesting that the trial

[5] General Statutes § 54-86g (a) allows a trial court, upon motion, to order that the testimony of a victim of child abuse be taken outside the courtroom and may order the defendant excluded from the room "only if the state proves, by clear and convincing evidence, that the child would be so intimidated, or otherwise inhibited, by the physical presence of the defendant that a compelling need exists to take the testimony of the child outside the

court order that the testimony of the child victim be videotaped outside the presence of the defendant. The trial court scheduled a hearing for February 29, 1996, to determine whether the state met the requirements articulated in *State* v. *Jarzbek*, supra, 204 Conn. 683. The defendant served a subpoena on the child victim in order to compel her to testify at the *Jarzbek* hearing.

On February 27, 1996, the state filed a motion to quash the defendant's subpoena and a motion in limine requesting that the court prohibit the defendant from compelling the child victim to testify at the *Jarzbek* hearing. On February 28, 1996, after a hearing on both motions, the trial court granted the state's motions.

"Section 54-86g permits a court, under limited circumstances, to order that the testimony of a child alleged to be a victim of sexual abuse be taken outside the defendant's presence. *State* v. *Jarzbek*, [supra, 204 Conn. 704–705.] To take advantage of this statute, the state must establish by clear and convincing evidence that a compelling need exists to exclude the defendant in order to preserve the accuracy and reliability of the minor's testimony. Id. In order to satisfy its burden, the state must show that the minor victim would be so intimidated . . . by the physical presence of the defendant that the trustworthiness of the victim's testimony would be seriously called into question. . . . *State* v. *Bonello*, 210 Conn. 51, 59, 554 A.2d 277, cert. denied, 490 U.S. 1082, 109 S. Ct. 2103, 104 L. Ed. 2d. 664 (1989); *State* v. *Spigarolo*, 210 Conn. 359, 368, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989).

"In order to fulfill the compelling need requirement of § 54-86g and *Jarzbek*, the state must present evidence that the reliability of the minor victim's testimony will

physical presence of the defendant in order to insure the reliability of such testimony. . . ."

be impaired if the child is forced to testify in the defendant's presence. Although the trial court may consider the well-being of the [child] as a significant factor in its analysis, the state cannot prove [compelling] need simply by demonstrating that the victim would suffer some harm if forced to testify in the presence of the accused. *State* v. *Jarzbek*, supra, 204 Conn. 705. Because the defendant's constitutional right of confrontation is implicated in such a determination, the trial court must focus primarily on the reliability of the minor victim's testimony." (Internal quotation marks omitted.) *State* v. *Ells*, 39 Conn. App. 702, 704–705, 667 A.2d 556 (1995), cert. denied, 235 Conn. 940, 669 A.2d 577 (1996).

In essence, the defendant is arguing that a child victim should be *compelled* to testify at the hearing to determine if the child victim would be so intimidated by the physical presence of the defendant that the trustworthiness of the victim's testimony would be seriously called into question. We disagree.

"*Jarzbek* requires an individualized, case-by-case assessment of the need to resort to the videotaping of the complaining minor witness' testimony outside the physical presence of the accused." (Internal quotation marks omitted.) *State* v. *Marquis*, 241 Conn. 823, 835, 699 A.2d 893 (1997). "The [ability] of a witness [to testify reliably] is a matter peculiarly within the discretion of the trial court and its ruling will be disturbed only in a clear case of abuse or of some error in law." (Internal quotation marks omitted.) Id., 836. In *Marquis*, our Supreme Court held that the trial court did not abuse its discretion when it granted the defendant's request to have an expert examine the child for the purpose of providing expert opinion evidence at the *Jarzbek* hearing. In this case, however, after a hearing on both of the state's motions, the trial court determined that it was not appropriate to have the child testify in the

*Jarzbek* hearing. The trial court indicated that the defendant could have an expert interview the child for the purpose of providing expert opinion evidence to rebut the state's evidence. The defendant argues that "the defendant would never have the opportunity to challenge the accuracy and truthfulness of the state's expert and lay witnesses" if the child was not allowed to testify in appropriate cases.

As the trial court indicated, the defendant had other avenues available to challenge the accuracy and truthfulness of the state's expert and lay witnesses. The trial court, in deciding if the state has met its burden in a *Jarzbek* hearing, must ensure that the hearing is meaningful. Id., 837. At the hearing on the state's motions, however, the defendant did not give the trial court any reasons why it was necessary to have the child testify, rather than have the child examined by an expert and have the expert testify. The defendant argues that because he elected not to attend the *Jarzbek* hearing, the victim would not be compelled to testify in his presence. The defendant, however, has not persuaded us that, without the child's testimony, his hearing would not be meaningful.

Under these circumstances, we conclude that the trial court did not abuse its discretion in granting the state's motion to quash the defendant's subpoena.

The judgment is affirmed.

In this opinion the other judges concurred.