# PHILIP SHUCHMAN *v.* STATE EMPLOYEES RETIREMENT COMMISSION
## (2307)

TESTO, DUPONT and BORDEN, Js.

Argued October 11, 1983—decision released March 27, 1984

*Wesley W. Horton,* with whom, on the brief, was *Henry S. Cohn,* for the appellant (plaintiff).

*Christina G. Dunnell,* assistant attorney general, with whom, on the brief, were *Joseph I. Lieberman,* attorney general, *Bernard F. McGovern, Jr.,* and *Robert E. Walsh,* assistant attorneys general, for the appellee (defendant).

DUPONT, J. The facts of this appeal[1] are not in dispute. The plaintiff began employment with the University of Connecticut School of Law in September, 1967. Prior to that date, he had been employed full time with the departments of education of two other states. The plaintiff sought and was denied retirement credit under the State Employees Retirement Act; General Statutes §§ 5-152 through 5-192d; for his service elsewhere.[2] The denial was based upon his failure under General Statutes § 5-177 to make a retirement contribution within one year of his first full time employment with this state.[3] The plaintiff then brought an action for a mandatory injunction, seeking a judgment directing the

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c). The trial court and the defendant characterize the action in the trial court as an appeal, presumably from a decision of the defendant commission. The action is not, however, an appeal under the Uniform Administrative Procedure Act. General Statutes §§ 4-166 through 4-189. The plaintiff sought injunctive relief, having abandoned an additional claim for a declaratory judgment, and is therefore before this court as of right on a direct appeal rather than by way of certification. See *Sentner* v. *Board of Trustees,* 184 Conn. 339, 439 A.2d 1033 (1981).

[2] The plaintiff will receive no retirement benefits from the University of Arkansas, at which he taught for eight months, but will receive retirement benefits from Indiana University, at which he taught for one year just prior to beginning his employment at the University of Connecticut School of Law.

[3] General Statutes § 5-177 provides in pertinent part as follows: "Any person . . . employed full time by The University of Connecticut . . . who served prior to his employment by the state in a full-time teaching . . . position in an educational institution in or under the authority of a state department of education . . . in the United States approved by the retire-

defendant to allow him to purchase retirement credit for his out-of-state teaching service. The trial court rendered judgment for the defendant.

On appeal, the issues raised by the plaintiff are: (1) whether the court erred in admitting into evidence two documents relevant to the issue of the plaintiff's actual notice of the time limitations of General Statutes § 5-177; (2) whether the court erred in finding actual notice; and (3) whether the court erred in finding that the statute did not deny the plaintiff equal protection of the law.[4]

I

The plaintiff claims error in the trial court's finding that an inquiry about the purchase of retirement credits for his out-of-state teaching was made in March, 1968, and in its finding that the plaintiff had received timely notice of his ability to purchase the credits in June, 1968. The findings were based, in part, upon the introduction into evidence of a memorandum of March, 1968, from the office manager and registrar at the law school to the university personnel assistant. The memorandum stated that the plaintiff was interested in receiving information concerning "buying-in retirement" and that he had taught at other schools and believed he could buy retirement benefits for the years

ment commission . . . for which service he has received or will receive no retirement benefit or pension, may gain credit for such prior service . . . by making retirement contributions for each year of such prior service . . . provided such payment shall be made within one year of his first full-time employment with this state . . . ."

[4] The plaintiff also claims that the defendant, in failing to make the plaintiff aware of his rights, breached its fiduciary duties, violated state and federal securities law and denied him due process of law. The trial court did not reach these issues, finding a resolution of them unnecessary to its decision. The decision of this court also makes it unnecessary to decide such claims since it is concluded that the trial court's finding of actual notice is supported by the evidence and is not clearly erroneous in view of that evidence.

spent teaching elsewhere. It concluded by asking the personnel director to send such information to the plaintiff. The author of the memorandum testified that someone had asked her to write it, that she did not know who had asked, that it was her job to write such memoranda involving retirement benefits, that normally such a memorandum would be written upon an inquiry by the dean or by a member of the faculty of the law school, and that she had personally typed the particular memorandum. Another witness responsible for maintaining personnel records testified that the original document was kept in her office in the plaintiff's personnel file folder. The defendant claimed it to be admissible under General Statutes § 52-180.[5] On appeal, the plaintiff argues that the writing is inadmissible because it was not based upon information transmitted to the entrant by an observer whose business duty it was to transmit such information.[6]

The trial court is given discretion under General Statutes § 52-180 (a) to determine whether the criteria of

[5] General Statutes § 52-180 provides in part as follows: "ADMISSIBILITY OF BUSINESS ENTRIES AND PHOTOGRAPHIC COPIES. (a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter.

"(b) The writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party's failure to show that such persons are unavailable as witnesses. Either of such facts and all other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of the evidence, but not to affect its admissibility."

[6] The objection raised at the time of trial was that the memorandum was inadmissible because the author did not remember at whose request the writing was made. The defendant claims that this objection is different from the one raised on appeal and therefore should not be considered. Although

the statute have been satisfied and, in reviewing the decision of the trial court to admit the evidence, an appellate court should construe the statute liberally. *Emhart Industries, Inc.* v. *Amalgamated Local Union 376, U.A.W.,* 190 Conn. 371, 388, 461 A.2d 422 (1983). Many Connecticut cases hold that records are to be excluded from evidence under the statute if the information contained therein is not obtained from those who had a duty to transmit it. These cases, however, involve mere volunteers with no business connection to the business, the record of which was sought to be introduced. *Hutchinson* v. *Plante,* 175 Conn. 1, 392 A.2d 488 (1978); *General Motors Acceptance Corporation* v. *Capitol Garage, Inc.,* 154 Conn. 593, 227 A.2d 548 (1967); *Sheary* v. *Hallock's of Middletown, Inc.,* 149 Conn. 188, 177 A.2d 680 (1962); *D'Amato* v. *Johnston,* 140 Conn. 54, 97 A.2d 893 (1953).

The entrant in the present case testified that a faculty member or the dean must have requested that she obtain the information, and also testified to the other prerequisites of General Statutes § 52-180. Someone, not necessarily the plaintiff, but one involved in the business of the law school, made a request for information. It could not have been an officious intermeddler, foreign to the affairs of the school. "It is well-settled that permissible information in a business entry or record may include information garnered from other persons whose business duty involved submitting that information for inclusion in the report or entry." *State* v. *Cosgrove,* 181 Conn. 562, 568–69, 436 A.2d 33

---

claims forming the basis for an objection to the introduction of evidence which are not asserted in the trial court will not be reviewed on appeal; *Emhart Industries, Inc.* v. *Amalgamated Local Union 376, U.A.W.,* 190 Conn. 371, 461 A.2d 422 (1983); the objections made at the trial level and on appeal are similar enough for review. The plaintiff's argument essentially is that if the specific transmitter of the information is unknown, it cannot be shown that the information came from an observer whose business duty it was to transmit it.

(1980). It is not necessary to prove the specific identity of the informant. McCormick, Evidence § 286.

The lack of personal knowledge of the entrant as to the particular source of the information affects the weight of the evidence, not its admissibility. Note, "Revised Business Entry Statutes: Theory and Practice," 48 Colum. L. Rev. 920, 926 (1948). Furthermore, General Statutes § 52-180 (b) (1) provides that the failure to produce the person who has personal knowledge of the event recorded will not affect the admissibility of a document, although that failure may affect the weight to be accorded to it. The reliability of business records should depend upon the extent to which they are considered reliable by the party for whom they are kept. C. Laughlin, "Business Entries and the Like," 46 Iowa L. Rev. 276 (1961). There was no error in the admission of the memorandum.

At the very least, the writing indicates that the author of the memorandum believed that the plaintiff sought information about his "buying-in retirement" credits, even if the writing did not conclusively prove that it was the plaintiff who initiated the memorandum. See *United States* v. *Burruss,* 418 F.2d 677, 678 (4th Cir. 1969). The plaintiff testified that he had no recollection of asking the entrant to seek such information for him. Any inference arising from the writing as to the plaintiff's knowledge of possible retirement credits for out-of-state teaching could be tested by the court against the plaintiff's disclaimer of knowledge. It was for the trial court to assess the weight to be given the memorandum in view of the plaintiff's testimony.

The plaintiff also claims error in the introduction into evidence of a University of Connecticut office memorandum dated June 3, 1968, and addressed to the plaintiff. It is from "personnel services" and its subject is the "purchase of prior teaching service under Public

Act 868." The author testified that he prepared it in the course of business and that it was the regular course of business as personnel assistant to make such writings and advise employees of the university as to "buy-ins" and retirement benefits. The plaintiff's claims of error are that the document was not prepared in the ordinary course of business and was not authenticated, apparently because it was not signed, was described as a "form letter" and the author could not remember if he mailed it. None of these claims for authentication is a requirement for introduction into evidence as a business entry. The memorandum met the criteria for introduction into evidence and the trial court did not err in such introduction.

The trial court had the benefit of observing the plaintiff and the witnesses and of listening to their testimony. In addition, it had as evidence all of the exhibits introduced by both parties, including fifteen exhibits which were not the subject of any objection. The court had facts from which it could conclude that the plaintiff had actual notice of the provision of General Statutes § 5-177. The factual basis for the court's conclusion is not clearly erroneous. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980). The court did not err in its ruling to introduce the exhibits, nor in concluding that the plaintiff had actual notice of the one-year limitation of General Statutes § 5-177.

II

The plaintiff also claims error in the failure of the court to find that General Statutes § 5-177 denies him the equal protection of the law.[7] He argues that the statute creates an arbitrary classification, not ration-

---

[7] The defendant argues that the plaintiff may not attack the constitutionality of a statute pursuant to which he seeks benefits. The plaintiff, however, in seeking a judgment requiring that the portion of General Statutes § 5-177 relating to a one-year limitation is unconstitutional as to him,

ally related to the state's goal of attracting experienced employees into the state. The classification complained of is the disparate treatment between those who wish to purchase retirement credit for prior out-of-state employment and those who wish to purchase retirement credit for prior service within the state or for military service. Those wishing to gain credit for out-of-state service pursuant to the statute must make a payment to the retirement fund within one year of their first full-time employment with the state whereas other employees wishing to gain credit for in-state service have no such time limitation.[8]

Many cases are illustrative of the principle that statutes which differentiate among categories of persons are constitutionally valid so long as such classifications for differing treatment are relevant to the achievement of a legitimate state purpose and do not involve a fundamental right or an inherently suspect classification such as race, sex, or alienage. *New York Transit Authority* v. *Beazer,* 440 U.S. 568, 592–93, 99 S. Ct. 1355, 59 L. Ed. 2d 587 (1979); *Brunswick Corporation* v. *Liquor Control Commission,* 184 Conn. 75, 83–85, 440 A.2d 792 (1981). Even an imperfect classification does not vitiate a statute and is not violative of equal protection where the statute concerns economic or social welfare. *Jefferson* v. *Hackney,* 406 U.S. 535, 546, 92 S. Ct. 1724, 32 L. Ed. 2d 285, reh. denied, 409 U.S. 898, 93 S. Ct. 178, 34 L. Ed. 2d 156 (1972).

Teachers are not a suspect classification and statutes making distinctions among them for purposes of retirement benefits do not deny equal protection of the law as long as the disparate treatment does not lead to

has not so relied on the statute as to be powerless to attack it. See *Brunswick Corporation* v. *Liquor Control Commission,* 184 Conn. 75, 82 n.4, 440 A.2d 792 (1981).

[8] See, e.g., General Statutes §§ 5-173 (c), 5-181, 5-183, 5-184, 5-188 (b), 5-189, 5-190 and 5-192b.

the conclusion that the legislature acted irrationally. *Morton* v. *State Teachers Retirement Board,* 70 Ohio App. 2d 114, 434 N.E.2d 1101 (1980). Thus, statutes have been held constitutional although they deny teachers with foreign country teaching experience the same right to purchase retirement credits as those with out-of-state teaching experience; id.; or deny male teachers the right to purchase pension credits for time not working while caring for a newborn baby when female teachers have such a right. *Chaleff* v. *Teachers' Pen. & Ann. Fund Trustees,* 188 N.J. Super. 194, 200, 457 A.2d 33 (1983). Other statutes which distinguish among teachers and which have withstood attack are those involving salary schedules for state vocational schools and state junior colleges; *Tate* v. *Teague,* 431 So.2d 1222, 1226 (Ala. 1983); those involving a different computation for retirement credit of teachers with prior service in parochial school; *Gubler* v. *Utah State Teachers Retirement Board,* 113 Utah 188, 201, 192 P.2d 580 (1948); those allowing the purchase of retirement credit by teachers who were members of a school system at the time of entry into military service but disallowing such purchase for others who entered the military service; *Fishman* v. *Teachers' Retirement System,* 86 Ill. App. 3d 649, 654–55, 408 N.E.2d 113 (1980), cert. denied, 452 U.S. 915, 101 S. Ct. 3048, 69 L. Ed. 2d 418 (1981); those involving the allowance of retirement credit for leaves of absence to some teachers but not others; *Leap* v. *Levitt,* 57 App. Div. 2d 1021, 1022, 395 N.Y.S. 2d 515 (1977); those which distinguish between two teachers' organizations; *Alabama State Federation of Teachers* v. *James,* 656 F.2d 193, 195–97 (5th Cir. 1981); and those which classify prior teaching experience differently. *Hughes* v. *Jefferson City Board of Education,* 370 So.2d 1034, 1037 (Ala. Civ. App. 1979).

The statutory differentiation of General Statutes § 5-177 which requires that payment for purchase of

retirement credit for out-of-state teaching service be made within one year has a rational basis and is not arbitrary or unreasonable. Admittedly, it treats in-state service in a manner different from out-of-state service. A state has a legitimate interest in conferring greater benefits to those who have previously served it as opposed to those who have not. *Langston* v. *Levitt*, 425 F. Sup. 642, 646–48 (S.D.N.Y. 1977).

The purpose of allowing purchase of retirement credits for in-state service without any time limitation is to reward continued service in the state; the purpose of providing for the purchase of retirement credit for out-of-state service is to attract qualified teachers to begin in-state service. An early determination as to the number of those persons who wish to purchase retirement credit for out-of-state teaching service is desirable. The legislature determined by its passage of General Statutes § 5-177 that the state owes more to those who previously gave it service than to others. The statute has a rational basis and does not violate the equal protection clause of either the federal or state constitution.

There is no error.

In this opinion the other judges concurred.