STATE OF CONNECTICUT *v.* EZEKIAL SCOTT
(11412)

DALY, FREEDMAN and CRETELLA, Js.

Argued March 30—decision released June 22, 1993

*Michael Graham,* for the appellant (defendant).

*Paul J. Ferencek,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* chief state's attorney, and *Kevin McMahon,* assistant state's attorney, for the appellee (state).

DALY, J. The defendant appeals from the trial court's judgment revoking the defendant's probation after finding that the defendant violated the terms of his probation. The defendant claims that the trial court improperly (1) determined that the defendant violated his probation without having before it the original or a certified copy of the judgment of conviction and sentence, (2) relied on a trial court clerk's order informing the office of adult probation that the defendant is on probation in lieu of the original or certified copy of the judgment of conviction, (3) found that the defendant had signed the document containing the conditions of probation, (4) determined that the defendant violated his probation because the evidence was not sufficient to support such a finding, and (5) relied on documents from Florida. We affirm the judgment of the trial court.

The defendant's probation revocation hearing was held on February 5, 1992. At the outset, the defendant objected on the ground that the court file did not contain a copy of the original judgment of conviction and sentence.[1] The objection was overruled and the

---

[1] The defendant pleaded guilty to robbery in the first degree, a violation of General Statutes § 53a-134 (a) (3) and, after successfully completing a drug treatment program, was sentenced on July 1, 1988, to eight years imprisonment, execution suspended and probation for five years.

state produced Hilda Nieves of the office of adult probation as the only witness. Nieves testified that her office was assigned the defendant's case by way of an "Order Placing on Probation" which was prepared by the clerk's office, signed by an assistant clerk and forwarded to Nieves' office. Over the defendant's objection, this order was entered into evidence under the business records exception to the hearsay rule as evidence for the purpose of establishing the defendant's original conviction and sentence. The trial court also ruled that this evidence was admissible because hearsay is admissible in probation revocation hearings. A copy of the conditions of probation was then introduced into evidence without proof that the defendant was the signatory of the document. The state produced other documents[2] demonstrating that Ezekial Scott had been convicted of selling cocaine in Florida during the period of the defendant's probation. The Ezekial Scott referred to in the Florida documents had the same date of birth as does the defendant. Nieves also testified that, according to the defendant's probation file, the defendant had met with probation officer Adele Ibsen on September 8, 1988, and had signed a "Conditions of Probation" form enumerating the conditions of his probation. This document was admitted over the defendant's hearsay and relevancy objections. Nieves testified that in January, 1989, she inherited the defendant's case from Ibsen.

The trial court found that the defendant had failed to comply with the following four of the five general conditions of his probation: (1) "Do not violate any criminal law of the United States, this state or any other state"; (2) "Report as a Probation Officer directs

---

[2] These documents included a certified copy of the memorandum of the sentence of the court, a document committing the defendant to the custody of the department of corrections in Florida, and a certified copy of the judgment and sentence.

and permit the officer to visit you as circumstances require"; (3) "Keep the officer informed of your whereabouts and give immediate notice of any change in address or employment"; and (4) "Do not leave the State of Connecticut without permission."

I

The defendant claims that before the trial court could find that he had violated the conditions of his probation, it was necessary that evidence of the original or a certified copy of the judgment of conviction and sentence be admitted into evidence. "General Statutes § 53a-32 (b) provides that no revocation of probation shall be ordered, 'except upon consideration of the whole record and unless such violation is established by reliable and probative evidence.' . . . 'All that is required for revocation of probation is that the court be satisfied that the probationer has abused the opportunity given him to avoid incarceration. . . .' " (Citation omitted.) *Payne* v. *Robinson,* 10 Conn. App. 395, 402, 523 A.2d 917 (1987), aff'd, 207 Conn. 565, 541 A.2d 504, cert. denied, 488 U.S. 898, 109 S. Ct. 242, 102 L. Ed. 2d 230 (1988). The defendant contends that the trial court lacked subject matter jurisdiction to hear this matter because the record was not "whole" within the meaning of § 53a-32 (b) where no original or certified copy of the judgment of conviction was in evidence. The defendant also argues that the probation order offered to prove the defendant's conviction and sentence was not "reliable and probative evidence." We disagree.

Turning to the defendant's first argument, we note that "[t]he primary purpose of a probation revocation proceeding is to determine whether the defendant is complying with the terms of his probation." *State* v. *Baxter,* 19 Conn. App. 304, 321, 563 A.2d 721 (1989). "[R]evocation is a continuing consequence of the original conviction from which probation was granted . . .

and the inherent authority to convict and sentence a defendant flows from the authority to adjudicate a criminal cause of action, the subject matter jurisdiction over a probation revocation proceeding derives from the original presentment of the information." (Citation omitted; internal quotation marks omitted.) *State* v. *Carey*, 222 Conn. 299, 306, 610 A.2d 1147 (1992). Thus, the trial court's jurisdiction to decide this matter was not contingent on the court's having before it either the original or a certified copy of the judgment of conviction and sentence.

As to the defendant's second argument, we are not persuaded that only the original or a certified copy of the judgment of conviction and the sentence is "reliable and probative evidence" of the defendant's conviction. "As the trier of fact, the court was charged with determining the credibility of the witnesses and the effect to be given the evidence. See *State* v. *Egan*, 9 Conn. App. 59, 69, 514 A.2d 493, cert. denied, 201 Conn. 811, 516 A.2d 886 (1986). If the record supports the trial court's finding that the defendant failed to comply with the conditions of his probation, the trial court then had the discretion to order a revocation of the probation." *State* v. *Johnson*, 11 Conn. App. 251, 258, 527 A.2d 250 (1987). We will not disturb the findings of the trial court absent an abuse of discretion. Id.

To prove a conviction, it is necessary to establish the existence of a valid final judgment. There is no statute that provides that the only admissible evidence of a conviction and sentence is that of the original or a certified copy of the conviction and sentence. The trial court had before it the testimony of Nieves and the probation order itself. It found the probation order to be reliable and probative evidence of the defendant's conviction and sentence. We find that the trial court did not abuse its discretion by relying on the evidence produced.

## II

The defendant next claims that the trial court improperly admitted into evidence under the business records exception to the hearsay rule; General Statutes § 52-180; the order of the Superior Court placing the defendant on probation. "General Statutes § 52-180 requires that evidence proffered under the business records exception to the hearsay rule satisfy three requirements: '(1) that the record was made in the regular course of business; (2) that it was the regular course of the business to make the writing; and (3) that the writing was made at the time of the transaction or occurrence or within a reasonable time thereafter. General Statutes § 52-180; *Emhart Industries, Inc.* v. *Amalgamated Local Union 376, U.A.W.,* 190 Conn. 371, 383–84, 461 A.2d 422 (1983).' *LaFaive* v. *DiLoreto,* 2 Conn. App. 58, 62–63, 476 A.2d 626, cert. denied, 194 Conn. 801, 477 A.2d 1021 (1984)." *State* v. *Waterman,* 7 Conn. App. 326, 341, 509 A.2d 518, cert. denied, 200 Conn. 807, 512 A.2d 231 (1986).

"The trial court is given discretion under General Statutes § 52-180 (a) to determine whether the criteria of the statute have been satisfied and, in reviewing the decision of the trial court to admit the evidence, an appellate court should construe the statute liberally." *Shuchman* v. *State Employees Retirement Commission,* 1 Conn. App. 454, 457–58, 472 A.2d 1290 (1984). "The reliability of business records should depend upon the extent to which they are considered reliable by the party for whom they are kept." Id., 459.

All three of the criteria enumerated in § 52-180 have been satisfied in this case. General Statutes § 54-92 provides that a "sentence to imprisonment shall be pronounced by the judge in the presence and hearing of the convicted person." Clerks are responsible for the

making of "records of all proceedings required to be recorded." General Statutes § 51-52 (a) (2). "The order as prepared and signed by the court clerk is presumed to be accurate. *State* v. *Lenihan,* 151 Conn. 552, 554[, 200 A.2d 476] (1964)." *State* v. *DiLeo,* 28 Conn. Sup. 354, 358, 261 A.2d 547 (1969). "[T]here is no requirement that the accuracy of a business record be proved as a prerequisite to its admission." *State* v. *Waterman,* supra, 342.

"It was within the trial court's discretion to determine the credibility of the witnesses and the weight to be given their testimony, including the testimony of the defendant's probation officer." *State* v. *Baxter,* supra, 320–21. The probation order was signed by an assistant clerk of the court and was forwarded to the office of adult probation. Additionally, Nieves testified that the order was kept as a business record of the office of adult probation, placed in the file that is maintained in the regular course of business shortly after the sentence and notification. The state was entitled to rely on the presumption of accuracy.

"Furthermore, General Statutes § 52-180 (b) (1) provides that the failure to produce the person who has personal knowledge of the event recorded will not affect the admissibility of a document, although that failure may affect the weight to be accorded to it." *Shuchman* v. *State Employees Retirement Commission,* supra; *E. Paul Kovacs & Co.* v. *Alpert,* 180 Conn. 120, 127, 429 A.2d 829 (1980). Thus, the fact that Nieves was not the person who created the document is of no moment. The trial court did not abuse its discretion in admitting the probation order into evidence as a business entry under § 52-180.[3]

---

[3] The document, even if it did not fall under this exception to the hearsay rule, was, as the trial court found, still admissible because in a probation revocation hearing, the trial court has the discretion to allow hearsay evidence if it is relevant, reliable and probative. *State* v. *Baxter,* 19 Conn. App. 304, 563 A.2d 721 (1989).

## III

The defendant also claims that there was no evidence that the defendant signed the conditions of probation. Nieves testified that her predecessor, Adele Ibsen, made a note in the defendant's file that she had reviewed with the defendant the conditions of probation during their initial interview, presumably, to comply with the provisions of General Statutes § 54-108. We note that § 54-108 does not require that the defendant's signature be on the conditions of probation, but only that the defendant be advised as to the conditions of his probation.

Even if § 54-108 did require a signature on the document containing the conditions of probation, the requirements of § 52-180 are satisfied here. The document was admissible and disclosed the signature of an Ezekial Scott. The trial court was entitled to infer it was the defendant's signature.

## IV

The defendant maintains that there was insufficient evidence to sustain the finding of a violation of probation. "A revocation of probation hearing has two distinct components and two purposes. A factual determination by a trial court as to whether a probationer has violated a condition of probation must first be made. If a violation is found, a court must next determine whether probation should be revoked because the beneficial aspects of probation 'are no longer being served. *Black* v. *Romano,* [471 U.S. 606, 611, 105 S. Ct. 2254, 85 L. Ed. 2d 636 (1985)]; *United States* v. *Czajak,* 909 F.2d 20, 22 (1st Cir. 1990). The former component requires that a fact be found by the trial court and the latter requires the exercise of the sound discretion of the trial court. *United States* v. *Harris,* 612 A.2d 198, 203 (D.C. App. 1992)." *State* v. *Davis,* 29

Conn. App. 801, 805, 618 A.2d 74, cert. granted, 225 Conn. 918, 623 A.2d 1024 (1993).

We may reverse the trial court's initial factual determination that a condition of probation has been violated only if we determine that such a finding was clearly erroneous. Id., 805. "Where the factual basis of the court's decision is challenged, we must determine whether the finding challenged is supported by the evidence or whether it is clearly erroneous because it is not supported by the evidence. See *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980). In making this determination, every reasonable presumption must be given in favor of the trial court's ruling. *State* v. *Amarillo,* 198 Conn. 285, 313–14, 503 A.2d 146 (1986)." *State* v. *Davis,* supra, 806.

Nieves testified that she had informed the defendant on April 26, 1989, to report to her in four weeks on May 31, 1989, but that he failed to do so. She also chronicled her efforts to locate him at his former place of employment, at his last known address and through telephone contact with his mother in New York City. All of these efforts were unsuccessful. Nieves eventually learned from a Federal Bureau of Investigation computer check that the defendant had been arrested and convicted in Florida for selling cocaine and that he was, at that time, incarcerated on New York's Ryker's Island for a conviction in that state. The defendant was brought back to Connecticut and served with a warrant. The evidence of a New York conviction indicated that the defendant had left this state without permission. Thus, we find that the trial court was not clearly erroneous when it found that the defendant had violated the conditions of his probation.

## V

The defendant finally argues that the trial court improperly received into evidence certified court papers

demonstrating the defendant's conviction in the state of Florida in violation of the general condition that the defendant not violate the criminal laws of any other state. Over the defendant's relevancy and hearsay objections, the court admitted in evidence a certified copy of the Florida judgment of conviction for the sale of cocaine. In light of our disposition of the other claims, it is unnecessary to address the evidence of the Florida conviction given that there was evidence that he had also violated a criminal law in New York.

Nevertheless, it was reasonable for the trial court to infer that the Ezekial Scott convicted in Florida was the defendant, especially in view of the personal data of the defendant, including his date of birth, that had been included in the computer check and that matched that of the Ezekial Scott convicted of selling cocaine in Florida.

The judgment is affirmed.

In this opinion the other judges concurred.