## STATE OF CONNECTICUT *v.* CHRISTOPHER DUMAS
### (AC 17703)

O'Connell, C. J., and Hennessy and Daly, Js.

Argued June 4—officially released September 14, 1999

*Francis T. Mandanici,* assistant public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.,* senior assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *David P. Gold,* supervisory assistant state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Christopher Dumas, appeals from the judgment of conviction, rendered after a trial to the court, of carrying a dangerous weapon without a permit in violation of General Statutes § 53-206, attempt to commit larceny in the second degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-123 (a) (3), attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-134 (a) (3), and violation of probation in violation of General Statutes § 53a-32. On appeal, the defendant claims that (1) the evidence was insufficient to support his conviction, (2) the prosecutor committed misconduct during his closing argument, (3) the trial court improperly failed to recuse itself, (4) the trial court improperly granted the state's discovery request

for a fingerprint examination and improperly denied his discovery request for an eye examination of the victim, (5) the trial court improperly required the defendant to sit at the defense table during the trial and (6) the trial court improperly admitted hearsay evidence. We affirm the judgments of the trial court.[1]

The following facts are necessary to a proper resolution of the defendant's appeal. On August 16, 1996, at approximately 9:15 a.m., the victim, Sheldon Taubman, was walking on a sidewalk in downtown New Haven. The defendant ran into the victim, pinned him against an iron fence and held a knife pointed downward at him. The victim then felt a tugging on a backpack that he was carrying on his left shoulder. The defendant, however, was unable to take the victim's backpack.

The victim escaped from the defendant and ran toward Olive Street. Before reaching Olive Street, the victim looked behind him and saw the defendant walking quickly in the opposite direction. The victim yelled for help from some nearby people. After the victim began yelling for help, the defendant started running. The victim then chased the defendant. During the chase, the victim saw a police officer, told him about the incident and gave him a description of the perpetrator.

Approximately one hour later, some officers brought the victim back to the scene of the incident. The officer who brought the victim back then asked him to observe the defendant as some officers removed him from the police car across the street. The victim told the officer

---

[1] The defendant also claims that the trial court improperly concluded that he violated his probation. In light of our conclusion that the trial court properly found the defendant guilty beyond a reasonable doubt on all of the charges, we conclude that the trial court properly found that the defendant violated his probation under the lower burden of proof required in a probation revocation proceeding. See *State* v. *Davis*, 229 Conn. 285, 295, 641 A.2d 370 (1994) (holding that state has burden of establishing violation of probation by fair preponderance of evidence).

that everything about the defendant was consistent with the appearance of the perpetrator, even though he had not been able to observe the perpetrator's face clearly during the incident.

I

The defendant first claims that the evidence was insufficient to support his conviction. Specifically, the defendant claims that the evidence was insufficient to prove that (1) he intended to commit larceny in the second degree and robbery in the first degree and (2) the blade of his knife was four inches or longer. We disagree.

"When reviewing sufficiency of the evidence claims, we impose a two part analysis. First, we construe the evidence in the light most favorable to sustaining the verdict. . . . Second, we determine whether, from that evidence and all reasonable inferences that it yields, a trier of fact could reasonably have concluded that the defendant was guilty beyond a reasonable doubt." (Citations omitted.) *State* v. *Scales*, 38 Conn. App. 225, 228, 660 A.2d 860 (1995).

A

The defendant claims that the evidence was insufficient to prove that he had the mental state required for the commission of attempt to commit larceny and robbery. We disagree.

General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." General Statutes § 53a-123 (a) provides in relevant part:

"A person is guilty of larceny in the second degree when he commits larceny as defined in section 53a-119 and . . . (3) the property . . . is taken from the person of another . . . ." "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ." General Statutes § 53a-119.[2]

"It is well established that [t]he question of intent is purely a question of fact. . . . The state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged. . . . Because it is practically impossible to know what someone is thinking or intending at any given moment, absent an outright declaration of intent, a person's state of mind is usually proven by circumstantial evidence. . . . Intent may be and usually is inferred from conduct. . . . [W]hether such an inference should be drawn is properly a question for the [finder of fact] to decide." (Internal quotation marks omitted.) *State* v. *Watson*, 50 Conn. App. 591, 605, 718 A.2d 497, cert. denied, 247 Conn. 939, 723 A.2d 319 (1998), cert. denied, 526 U.S. 1058, 119 S. Ct. 1373, 143 L. Ed. 2d 532 (1999).

From the evidence presented and all of the reasonable inferences that it yields, the trial court reasonably could have found that the defendant had the requisite intent to commit larceny in the second degree and rob-

[2] Robbery and larceny require the perpetrator to have the same level of intent. Robbery in the first degree under § 53a-134 (a) (3) requires a defendant to commit a robbery while threatening the use of a dangerous instrument. "A person commits robbery when, *in the course of committing a larceny,* he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny." (Emphasis added.) General Statutes § 53a-133.

bery in the first degree. The victim's testimony supports the trial court's finding that the defendant intentionally and forcibly stopped the victim, pinned him against a fence while holding a large knife and attempted to pull the defendant's backpack from his left shoulder before the victim could escape.

The defendant claims that "it would be pure speculation to conclude that the perpetrator pinned him against the fence as compared to merely bumping into him, especially since the perpetrator said nothing that constituted an intent to take any property." We disagree, however, because the trial court reasonably could have found that the defendant, by threatening the victim with a knife as he forced the defendant against the fence was not merely bumping into him. "In evaluating evidence that could yield contrary inferences, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence." *State* v. *DeJesus*, 236 Conn. 189, 195, 672 A.2d 488 (1996). Moreover, "the absence of a specific demand for property, in and of itself, does not prevent a finding by the trier of fact [on] the element of intent . . . ." *State* v. *Morrill*, 193 Conn. 602, 609, 478 A.2d 994 (1984).

B

The defendant also claims that the evidence was insufficient to support his conviction of carrying a dangerous weapon and attempt to commit robbery in the first degree. Specifically, the defendant claims that because the victim described the length of the defendant's knife as "probably in the five to six inch range," the evidence was insufficient to prove that the defendant either carried a dangerous weapon without a permit in violation of § 53-206 or threatened the use of a dangerous instrument as required for a conviction of attempt to commit robbery in violation of § 53a-134 (a) (3).[3] We disagree.

[3] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission

Additional facts are necessary to our resolution of this claim. The victim testified that the defendant, as he pinned the victim against the fence, was holding a "fairly long" knife. The victim then testified that even though he could not say exactly how long the knife's blade was, he thought "it was probably in the five to six inch range." The knife was never introduced into evidence. Moreover, the defendant did not have a permit to carry a dangerous weapon.

"Any person who carries upon his person any . . . knife the edged portion of the blade of which is four inches or over in length . . . unless such person has been granted a written permit issued and signed by the first selectman of a town, the mayor or chief of police of a city or the warden of a borough, authorizing such person to carry such weapon or instrument within such town, city or borough, shall be fined not more than five hundred dollars or imprisoned not more than three years or both. . . ." General Statutes § 53-206 (a).

After construing the evidence in a light most favorable to sustaining the conviction, we conclude that the trial court reasonably could have concluded that the defendant was carrying a dangerous weapon without a permit in violation of § 53-206. Even though neither party introduced the knife into evidence, the victim testified that the length of the blade was probably five or six inches. We conclude that the victim's testimony was sufficient to support the trial court's conclusion that the defendant was carrying a dangerous weapon without a permit in violation of § 53-206.

Moreover, the defendant's claim that the evidence was insufficient to prove that the knife was a dangerous

of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (3) uses or threatens the use of a dangerous instrument . . . ." "Dangerous instrument" is defined as "any instrument, article or substance which, under the circumstances in which it is used or attempted or threatened to be used, is capable of causing death or serious physical injury . . . ." General Statutes § 53a-3 (7).

instrument as required by § 53a-134 (a) (3) is without merit. General Statutes § 53a-3 (7) defines a dangerous instrument as "any instrument, article or substance which, under the circumstances in which it is used or attempted or threatened to be used, is capable of causing death or serious physical injury . . . ." The trial court could reasonably conclude that the knife used in this case was capable of causing death or serious physical injury. Accordingly, we conclude that the evidence was sufficient for the trial court to find that the defendant attempted to commit robbery in the first degree.

## II

The defendant's second claim is that the prosecutor committed misconduct during the course of his closing argument. Specifically, the defendant claims that the prosecutor's closing argument "impermissibly burdened the defendant's constitutional rights to require the state to meet its burden of proving him guilty beyond a reasonable doubt." We disagree.

Additional facts are necessary for a proper resolution of this claim. During the trial, the defendant requested that he be permitted to leave the courtroom during the testimony of the arresting officers so that the officers could not identify him. The trial court denied the defendant's request. After the state rested, the defendant rested without presenting any evidence. During the state's closing argument, the prosecutor stated that "[t]he defendant has no burden, obviously, to prove anything. And counsel has made that abundantly clear. The defendant put the state to its proof, including the proof that the man seated in the courtroom was the man who was arrested, including the proof that the man in the courtroom was the person who was convicted back in 1990. That's his prerogative. He's done it. In my humble opinion, it would not have been done in front of a jury for the very reason that the jury in

hearing a litany of wild defense claims being posed, a defendant trying a case to a jury would have realized what the backlash of that would be because what a juror would conclude is that with no defense to the charges, whether they're in the criminal file or in the [violation of probation] file, the defense embarked through a series of obstacles in front of the state in an effort to see if they could trip them up, there being no true defense to the charges that we're here on, either on the [violation of probation] or in the criminal offense. That's how I saw it. I think the defense looks to Your Honor not to draw the same negative inference from it."

The defendant failed to raise this claim at trial and now seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[4] "[T]o deprive a defendant of his constitutional right to a fair trial . . . the prosecutor's conduct must have so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct. . . . [M]oreover . . . [*Golding*] review of such a claim is unavailable where the claimed misconduct was not blatantly egregious and merely consisted of isolated and brief episodes that did not reveal a pattern of conduct repeated throughout the trial. . . . *State* v. *Atkinson*, 235 Conn. 748, 769, 670 A.2d 276

---

[4] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

(1996)." (Internal quotation marks omitted.) *State* v. *Correa*, 241 Conn. 322, 356–57, 696 A.2d 944 (1997).

We will review the defendant's second claim because the record is adequate for review and because the defendant's claim of prosecutorial misconduct is of constitutional magnitude alleging the violation of a fundamental right. The record in this case, however, does not support a claim that the defendant was clearly deprived of a fair trial and, therefore, fails under the third prong of *Golding*. Here, the challenged statements merely described the defendant's trial strategy. The prosecutor clearly stated that the defendant had the right to proceed as he did. Further, the defendant does not raise any other claims of prosecutorial misconduct. "We will not afford *Golding* review to [unpreserved] claims of prosecutorial misconduct where the record does not disclose a pattern of misconduct pervasive throughout the trial or conduct that was so blatantly egregious that it infringed on the defendant's right to a fair trial." (Internal quotation marks omitted.) *State* v. *Villanueva*, 44 Conn. App. 457, 461, 689 A.2d 1141, cert. denied, 240 Conn. 930, 693 A.2d 302 (1997).

Further, the prosecutor's comments were directed to the court, not to a jury. "While this fact alone would not excuse an egregious violation of the rule, it is properly taken into consideration as part of the context in which it is made. An indirect comment in argument to the court on a point of law is less serious than a comment in jury summation that asks the jury to infer that the defendant's silence is evidence of guilt. See *United States* v. *Robinson*, 485 U.S. 25, 108 S. Ct. 864, 99 L. Ed. 2d 23 (1989)." *State* v. *Cobb*, 27 Conn. App. 601, 607, 605 A.2d 1385 (1992).

III

The defendant's third claim is that the trial court improperly failed to recuse itself. Specifically, the

defendant claims that because the trial court referred to him as a "marauder" shortly after sentencing, it exhibited a personal bias against the defendant and should have recused itself from the case. The defendant's claim is without merit.

The following facts are necessary to our resolution of this claim. During the sentencing hearing, the state remarked to the trial court that the defendant, in 1990, committed four armed robberies for which he received a six year sentence. The state then stated that as soon as the defendant finished serving those six years, he committed the crimes against the victim here in violation of the terms of his probation. The trial court then sentenced the defendant to a term of twelve years to be served consecutively with a six year sentence for violating his probation. The trial court explained that "[t]he reason the sentences were imposed to that magnitude . . . [is] that it is time that the citizens of New Haven and society in general are protected from marauders like [the defendant]. That's what he is." The defendant immediately objected, moving the trial court to disqualify itself because it had "already imposed sentence and then to add a dig on him that he's a marauder . . . shows a bias and prejudice . . . and we should reopen the sentencing and have it heard by some other judge." The trial court denied the defendant's motion.

Practice Book § 1-22, formerly § 996, provides in relevant part that "[a] judicial authority shall, upon motion of either party or upon its own motion, be disqualified from acting in a matter if such judicial authority is disqualified from acting therein pursuant to Canon 3 (c) of the Code of Judicial Conduct or because the judicial authority previously tried the same matter and a new trial was granted therein or because the judgment was reversed on appeal. . . ."

"Accusations of judicial bias or misconduct implicate the basic concepts of a fair trial. . . . The appearance

as well as the actuality of [partiality] on the part of the trier will suffice to constitute proof of bias sufficient to warrant disqualification. . . . Canon 3 (c) (1) provides in relevant part: A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where: (A) the judge has a personal bias or prejudice concerning a party . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Montini*, 52 Conn. App. 682, 694, 730 A.2d 76, cert. denied, 249 Conn. 909, 733 A.2d 227 (1999).

"To prevail on [his] claim of a violation of this canon, the [defendant] need not show actual bias. The [defendant] has met [his] burden if [he] can prove that the conduct in question gave rise to a reasonable appearance of impropriety. We use an objective rather than a subjective standard in deciding whether there has been a violation of canon 3 (c) (1). Any conduct that would lead a reasonable [person] knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned is a basis for the judge's disqualification. Thus, an impropriety or the appearance of impropriety . . . that would reasonably lead one to question the judge's impartiality in a given proceeding clearly falls within the scope of the general standard . . . . The question is not whether the judge is impartial in fact. It is simply whether another, not knowing whether or not the judge is actually impartial, might reasonably question his . . . impartiality, on the basis of all of the circumstances." (Internal quotation marks omitted.) *Abington Ltd. Partnership* v. *Heublein*, 246 Conn. 815, 819–20, 717 A.2d 1232 (1998).

We conclude that the trial court's use of the word "marauder" to describe the defendant could not lead a reasonable person to question the court's impartiality. The trial court merely used the term marauder to describe the defendant as a person who was involved

with small scale attacks. The defendant does not provide any evidence in support of his bare assertions of bias. "It is a fundamental principle that to demonstrate bias sufficient to support a claim of judicial disqualification, the due administration of justice requires that such a demonstration be based on more than opinion or conclusion." (Internal quotation marks omitted.) *State* v. *Montini*, supra, 52 Conn. App. 695–96.

Finally, the defendant's claim that the trial court demonstrated its bias toward him "because he was treated unfairly throughout the trial as shown by the questionable adverse rulings by the judge" is without merit. "[T]he alleged bias and prejudice, to be disqualifying, must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." (Internal quotation marks omitted.) Id., 696. Accordingly, we conclude that the trial court did not abuse its discretion in denying the defendant's motion for recusal.

IV

The defendant's fourth claim is that the trial court improperly granted the state's motion for a fingerprint examination of the defendant while at the same time denying the defendant's motion for an eye examination of the victim. This claim is without merit.

The following additional facts are necessary for a proper resolution of this claim. On the first day of trial, the state called Officer Brian Donnelly to prove, inter alia, that the defendant was the person that he had arrested after the crimes were reported. Before Donnelly took the stand to testify, however, the defendant requested that the trial court permit him to leave the courtroom so that Donnelly could not identify him as the person that he arrested. In response, the state filed a motion to obtain nontestimonial evidence pursuant

to Practice Book § 776, now § 40-32, to take the defendant's fingerprints. The defendant objected to the state's motion and further argued that the victim should submit to an eye examination. The defendant argued that if the trial court were to grant the state's motion then it would have a duty to grant the defendant's motion "in order to avoid a double standard." The defendant, during his cross-examination of the victim, however, never asked him any questions regarding his eyesight. The trial court granted the state's motion and denied the defendant's motion. In granting the state's motion, the trial court stated that there was good cause to grant it because the issue of whether the defendant was the person arrested was unforeseen, and the fingerprint evidence was therefore material in determining whether the defendant committed the offenses. In denying the defendant's motion, the trial court concluded that there was no evidence presented that the victim had a vision problem and, therefore, an eye examination was unnecessary.

The defendant claims that the trial court should have denied the state's motion because it was a pretrial discovery request under Practice Book §§ 40-34 and 41-3, formerly §§ 778 and 809, that was not made within ten days after the first pretrial conference. See Practice Book § 41-5, formerly § 811. We conclude, however, that the state sufficiently showed that there was good cause to grant its untimely motion because the defendant was attempting to prevent the state from identifying him. See Practice Book § 41-4, formerly § 810; cf. *State* v. *Synakorn*, 239 Conn. 427, 434, 685 A.2d 1123 (1996).

"[Practice Book §] 776 [now § 40-32] authorizes a reasonably conducted procedure to obtain nontestimonial evidence if the judicial authority finds probable cause to believe that the evidence may be of material aid in determining whether the defendant committed

the offense charged and that the evidence cannot practicably be obtained from other sources. Practice Book § 778 (7) [now § 40-34 (7)] specifically authorizes 'reasonable body surface examinations' as part of a procedure to obtain nontestimonial evidence." *State* v. *Skipper*, 228 Conn. 610, 628, 673 A.2d 1101 (1994). The trial court concluded that the fingerprint evidence would be a material aid in determining whether the defendant committed the charged offense and that such evidence could not practicably be obtained from other sources. Accordingly, we cannot conclude that the trial court abused its discretion by ordering, pursuant to Practice Book § 40-32 et seq., that the defendant have his fingerprints taken.

The defendant also claims that because "the defendant's motion and the state's motion were similar, and since the defendant's motion stated that both motions should be treated evenhandedly, the court by granting the state's motion and denying the defendant's motion," violated a number of his constitutional rights. The defendant fails to provide any authority to support his claim. "Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Citations omitted; internal quotation marks omitted.) *Cummings* v. *Twin Tool Mfg. Co.*, 40 Conn. App. 36, 45, 668 A.2d 1346 (1996). We conclude, therefore, that the trial court properly ruled on each motion individually and was not under any duty to grant the defendant's motion merely because the court granted the state's motion. Accordingly, the trial court did not abuse its discretion in denying the defendant's motion.

V

The defendant next claims that the trial court abused its discretion by forcing him "to sit at the defense table and be subjected to suggestive one-on-one identifications." This claim is without merit.

During it's case-in-chief, the state called two police officers to identify the defendant as the man they arrested after the crimes were committed. Before each officer testified, however, the defendant requested that he either be permitted to (1) leave the courtroom when the officers were called to testify, (2) face backward when they testified, (3) wear a bag over his head when they testified or (4) sit elsewhere in the courtroom when they testified. The trial court denied each of these requests.

"[T]he manner in which in-court identifications are conducted is not of constitutional magnitude but rests within the sound discretion of the trial court. . . . In such cases, the defendant's protection against the obvious suggestiveness in any courtroom identification confrontation is his right to cross-examination . . . or other practical procedures designed to lessen the degree of suggestiveness." (Citations omitted; internal quotation marks omitted.) *State* v. *Reddick*, 224 Conn. 445, 470, 619 A.2d 453 (1993).

We conclude that the trial court did not abuse its discretion in denying the defendant's requests. Requiring the defendant to sit at the defense table was not suggestive in any way. Further, the defendant had the opportunity to cross-examine each of the officers regarding their identifications of him.

VI

The defendant's final claim is that the trial court improperly admitted hearsay. Specifically, the defendant claims that the trial court improperly admitted

under the business records exception to the hearsay rule (1) a computer printout and (2) a photograph of the defendant. The defendant's claims are without merit.

"Our standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Internal quotation marks omitted.) *State* v. *Rogers*, 38 Conn. App. 777, 796, 664 A.2d 291, cert. denied, 235 Conn. 918, 665 A.2d 610 (1995), cert. denied, 516 U.S. 1084, 116 S. Ct. 799, 133 L. Ed. 2d 747 (1996).

"An out-of-court statement offered to prove the truth of the matter asserted is hearsay and is generally inadmissible unless an exception to the general rule applies." *State* v. *Hines*, 243 Conn. 796, 803, 709 A.2d 522 (1998). "General Statutes § 52-180 requires that evidence proffered under the business records exception to the hearsay rule satisfy three requirements: (1) that the record was made in the regular course of business; (2) that it was the regular course of the business to make the writing; and (3) that the writing was made at the time of the transaction or occurrence or within a reasonable time thereafter." (Internal quotation marks omitted.) *State* v. *Scott*, 31 Conn. App. 660, 665, 626 A.2d 817 (1993). "The trial court is given discretion under General Statutes § 52-180 (a) to determine whether the criteria of the statute have been satisfied and, in reviewing the decision of the trial court to admit the evidence, an appellate court should construe the statute liberally." (Internal quotation marks omitted.) Id.

## A

The defendant claims that the trial court improperly admitted a computer printout under the business records exception to the hearsay rule because the witness could not identify the person who entered the data to produce the printout and could not identify the time when the entries were made.

The state introduced the clothes that the defendant was wearing at the time of the incident through Aaron Hazelwood, a correction officer at the New Haven Correctional Center. Hazelwood testified that as soon as an inmate is brought to the prison, he is issued prison clothes. The inmate's original clothing is inventoried, put into a garment bag and is locked up in a "property room." Hazelwood then testified that he researched the prison records to determine that the defendant was admitted to the prison on August 19, 1996. The state presented Hazelwood with a computer printout indicating that the defendant was admitted to the prison on August 19, 1996. Hazelwood testified that the printout was made in the regular course of business, that it was the regular course of business to make the writing and that the writing was made at the time of the occurrence. Hazelwood then testified that an intake counselor is responsible for making the entries to create the computer printout indicating when the inmates are admitted. Hazelwood stated that he could not identify which intake counselor entered the defendant's information, but that it was an everyday practice for an intake counselor to make the entries. Hazelwood, however, did not have actual knowledge that the entries here were made by an intake counselor. Further, Hazelwood admitted that he did not know exactly when the entries were made.

We conclude that even though Hazelwood could not identify the person who prepared the printout and could

not identify when the printout was made, the trial court did not abuse its discretion in admitting the printout as a business record. Hazelwood testified that an intake counselor would prepare this type of printout every day. Even though Hazelwood did not know who the intake counselor was that day, "General Statutes § 52-180 (b) (1) provides that the failure to produce the person who has personal knowledge of the event recorded will not affect the admissibility of a document, although that failure may affect the weight to be accorded to it." (Internal quotation marks omitted.) *State* v. *Scott*, supra, 31 Conn. App. 666. Thus, it is of no moment that Hazelwood was not the person who created the printout and did not have personal knowledge of the person who actually created the document.

Moreover, the defendant claims that the state failed to prove that the printout was made at the time that the defendant was admitted to the prison. We conclude, however, that the trial court reasonably could have found that the printout was made contemporaneously with the defendant's admittance to the prison. "[T]he inability of [the witness] to testify as to the exact date and time when a report was filled out does not render the report inadmissible. We have held that the statute should be liberally interpreted. . . . In part, this is due to the fact that the statute recognizes that the trustworthiness of such documents comes from their being used for business and not for litigation. . . . In light of this principle, if it can be demonstrated . . . that it was the regular business practice to file reports within a reasonable time after the incident itself, this is sufficient to assure that the report was made at a time when the incident was fresh in the author's mind." (Citations omitted.) *Emhart Industries, Inc.* v. *Amalgamated Local Union 376, U.A.W.*, 190 Conn. 371, 388–89, 461 A.2d 422 (1983). We conclude, therefore, that the trial

court did not abuse its discretion in admitting the printout under the business records exception to the hearsay rule.

## B

The defendant also claims that the trial court abused its discretion by admitting a photograph of the defendant under the business records exception.

The state called Sergeant Joyce Illingworth to testify that the arrest records of the New Haven police department are maintained by the department in the regular course of business and are made by the officers within the department at or about the time that the person is arrested. One of the records brought by Illingworth to trial was a computerized photograph of the defendant. Illingworth explained that the department took the photograph as part of the booking process. Illingworth searched the defendant's computerized records and determined that the photograph was the defendant's arrest photograph of August 16, 1996. The trial court, under the business records exception, admitted the photograph over the defendant's objection that there was no evidence of who took the photograph or of when the photograph was taken.

Illingworth testified that Marie Mancini, a record clerk under her supervision, took the photograph on August 16, 1996, at 5:35 p.m. Further, Illingworth testified that the photograph was taken as part of the booking process. The trial court reasonably could have inferred that the photograph was taken at the time the defendant was arrested and booked on August 16, 1996. Accordingly, we conclude that the trial court did not abuse its discretion in admitting the photograph as a business record under § 52-180.

The judgments are affirmed.

In this opinion the other judges concurred.